GEORGE R. PAUL *vs.* SELECTMEN OF SCITUATE & another.

Plymouth.    April 5, 1938. — October 27, 1938.

Present: LUMMUS, QUA, DOLAN, & COX, JJ.

*Zoning.*

The facts that a building, originally constructed for a residence, had been used by the owner as a restaurant for seven years, and that the owner became bankrupt and the property was sold and thereafter was not used for over two years, did not require a finding that the use as a restaurant was abandoned so that a new owner would be precluded

from the benefit of a provision of a zoning by-law, adopted after the period of nonuse, permitting a building which was nonconforming in use at the time of its adoption to be continued in such use.

A finding and ruling by a single justice hearing a petition for a writ of mandamus to require enforcement of a zoning by-law, that new construction on the premises in question provided for a nonconforming use substantially greater than that for which the building was used when the zoning by-law was adopted did not make erroneous a dismissal of the petition, although the by-law permitted continuance of nonconforming use only if it was "to the same extent" or "not substantially different," where it did not appear that as yet the owner had made any use of the premises whatever.

PETITION, filed in the Supreme Judicial Court for the county of Plymouth on March 23, 1937.

The petition was ordered dismissed by *Pierce*, J.

*J. B. Jacobs*, for the petitioner.

*V. W. Marr*, for the respondent selectmen of Scituate.

*B. J. Killion*, (*J. F. Connolly* with him,) for the intervener.

*F. J. Carney & K. P. Hern*, *amici curiae*, submitted a brief by leave of court.

Cox, J. This is a petition for a writ of mandamus, directing certain of the respondents, as they are the board of selectmen of the town of Scituate, to revoke a victualler's license issued on March 9, 1937, to one Michael P. Zullas, an intervening respondent, for use on premises owned by Zullas in said town, and further directing the respondent selectmen to apply for an injunction to restrain any violation by Zullas of a zoning by-law of the town, and to take such further steps as may be required to enforce the by-law, in so far as it applies to his premises. The case was heard by an auditor, whose report is made a part of the bill of exceptions, and it then came on to be heard before a single justice on the auditor's report and also on a stipulation of the parties, the material portion of which relates merely to the required publication of a copy of the zoning by-law before it can take effect. G. L. (Ter. Ed.) c. 40, § 32, as amended by St. 1933, c. 185, § 1. The single justice made certain findings of fact and rulings of law, refused to make others, and ordered the petition dismissed as a matter of law. The petitioner's exceptions relate to the denial by the single justice of certain requests for findings of fact and

rulings of law, and to the "denying" and "dismissing" of the petition.

The single justice found that, some time about the year 1902, "Dreamwold" was designed and constructed in Scituate as a residence for Thomas W. Lawson, and was occupied by him and his family solely as a residence until 1922. From 1922 to 1926 it was unoccupied. In 1926, it was purchased by one Dailey and his wife, who "used" it as a restaurant and resided there until 1933, when its use as a restaurant was discontinued. In the "operation" of "Dreamwold" as a restaurant, the Daileys made no structural changes except to enlarge the kitchen by tearing out a part of its wall and enclosing a portion of the adjoining piazza. They also walled up a portion of this piazza and installed a large refrigerator. Dining tables and chairs were set up in what had been the library, billiard room, conservatory and entrance hall. Dailey filed a petition in bankruptcy in February, 1934, and his assets were sold prior to April 13, 1934, by his trustee in bankruptcy. On that date a mortgage on the real estate was foreclosed by sale. From 1933, to January, 1935, "Dreamwold" was unoccupied except by a caretaker, who did not remain there during the night time. There was no change in the design or structure of the building until after May 1, 1936, and there was no repair, alteration, or change in design until after that date which in any way changed "Dreamwold" from a residence to a different type of structure. On March 2, 1936, the building was the same as it had been during its occupancy by Mr. Lawson with no substantial or material change. No victualler's license for the premises was issued from 1933 to 1937.

The auditor found that in September, 1935, the respondent Zullas contracted to buy the buildings and land, consisting of seven acres, and took title on May 15, 1936. In November, 1935, repairs upon the premises were commenced and continued until Christmas. The inside of the building was cleaned, certain partitions in the kitchen and basement were taken down, and a large girder or beam was installed in the kitchen ceiling as a support. More extensive

changes were not made until the spring of 1936. The single justice also found that some time after May 15, 1936, the structure of "Dreamwold" was changed by the addition of a large room which might be used for dancing and as a restaurant. This room occupied the space of the old veranda, which was removed. This veranda was thirty feet in width and extended the entire length of the building. The room exceeded the length of the veranda by six feet and the width by ten feet, eight inches. It was completely built in with windows and a roof, and when constructed, doubled the space that Dailey had used in conducting a restaurant, and gave Zullas as much space in one room as Dailey had in the original house. The single justice declined to find that the "adding on [of] the additional room of a kind and structure suitable merely for use as a restaurant and dance hall, changed the building from a conforming to a nonconforming building;" or that "the construction of the new room changed the building from a residence to a building suitable for business;" or that it "changed the house from a residence to a structure merely for commercial purposes;" or that "the construction of the new room at Dreamwold provided for its use for a purpose and in a manner substantially different from that to which it was put before alteration." The auditor found that Zullas caused the bay window on the front of the building to be taken out, a new oil-heating plant to be installed, and the steps and foliage in the rear of the building to be relocated to conform to the reconstruction of the veranda; and that he placed $4,000 worth of other equipment upon the premises. He also found that Dailey, who had a victualler's license from 1926 to 1933, and a license to sell beer and wines in 1933, had chairs and tables on the veranda that was later removed, where he served his guests; that when the victualler's license was granted to Zullas on March 9, 1937, the building was adequately equipped for its authorized purpose. He also found that, "by extending and enlarging the veranda, better facilities are offered for the care of patrons and that Mr. Zullas intended to utilize the additional space for seating his guests, thus relieving the

necessity of placing tables in the library, billiard room, conservatory and upstairs rooms and that instead of using such rooms as dining rooms, he would adapt them as lounging rooms, ladies' room and men's room, for the greater convenience of patrons; that in so doing he would have substantially the same capacity for dining service to his guests as Mr. Dailey formerly had. I find that any change or alteration made under the direction of the intervening respondent was not to provide for its use for a purpose or in a manner substantially different from the use to which it had been put by Mr. Dailey before such change or alteration nor for its use to the same purpose to a substantially greater extent."

The zoning by-law in question was adopted at the annual town meeting on March 2, 1936, under the authority of G. L. (Ter. Ed.) c. 40, §§ 25–32, as amended by St. 1933, c. 269, § 1, (see St. 1933, c. 185, § 1, and St. 1935, c. 388, §§ 1, 2,) and no question is raised as to its being in force. It divided the town into areas or zones described as "A" and "B," and the use of a building or premises for restaurant purposes was not permitted in zone "A," in which "Dreamwold" was located. Section 4 of the by-law reads, in part, as follows: "Any building structure or premises in an 'A' zone which at the time of adoption of this by-law is being used for a purpose not permitted hereunder, may be continued to the same extent in such use or in a use not substantially different therefrom. Any building or structure in an 'A' zone, which at the time of adoption of this by-law does not conform to the kinds of buildings or structure permitted hereunder, may be maintained, may be structurally altered, or enlarged to the extent of the entire contiguous premises owned on the date of passage . . . [of] this by-law by the then owner of said building or structure."

We are concerned only with the first quoted sentence of this section. The by-law contains no provision relating to the alteration of a building or structure except such as, at the time of the adoption of the by-law, did not conform to the kinds of buildings or structures permitted by it. Com-

pare G. L. (Ter. Ed.) c. 40, §§ 26 and 29, as appearing in St. 1933, c. 269, § 1.  See *LaMontagne* v. *Kenney*, 288 Mass. 363.  Furthermore, the single justice specifically found that the structural changes in the building did not change it from a conforming to a nonconforming building.  He also declined to find that the construction of the new room at "Dreamwold" provided for its use for a purpose and in a manner substantially different from that to which it was put before alteration.

For the purposes of this decision it may be said that, as to the form of remedy, it is assumed that the petition is properly before us.  It has been held that the jurisdiction in equity conferred upon the Superior Court by G. L. c. 40, § 28 (see § 30A appearing in St. 1933, c. 269, § 1,) does not purport to confer rights upon individuals suffering only a private injury to invoke equitable relief.  *O'Brien* v. *Turner*, 255 Mass. 84, 86.  In instances similar to the case at bar, mandamus has been the remedy invoked.  *Cochran* v. *Roemer*, 287 Mass. 500.  We deal with the petition upon its merits.

Although the single justice found that Dailey discontinued the use of "Dreamwold" as a restaurant some time in 1933, he refused to find that the use of the building as a restaurant was abandoned.  He refused to rule that there had been an abandonment.  We think there was no error.  Abandonment is primarily a question of fact, *Gorton-Pew Fisheries Co.* v. *Tolman*, 210 Mass. 402, 413; although where there is no dispute as to the facts, and all the evidence is before the court, a question of law is presented.  *Hartt* v. *Rueter*, 223 Mass. 207, 212.  A mere nonuser would not conclusively show an abandonment.  *O'Shea* v. *Mark E. Kelley Co.* 273 Mass. 164, 170.  The finding of the single justice cannot be disturbed, and we think there was no error in his ruling as to abandonment.

The remaining question is whether upon this record any violation is shown of so much of § 4 of the by-law as provides, in effect, that the use of "Dreamwold" as a restaurant may be continued to the same extent as it was so used at the time of the adoption of the by-law.  We think

that no such violation is shown.   There is nothing in the record from which it can be found that any use whatever of the premises has been made since the victualler's license was granted to Zullas.   The auditor's findings, hereinbefore quoted, negative any intention to use the premises for restaurant purposes to a greater extent.   The by-law itself does not look to the possibility of, or to an opportunity for, a greater use.   It deals with and permits a continuance of use to the same extent as before;  and, until such time, if ever, as a use to a greater extent is shown, the by-law, in our opinion, has not been violated.   It results from this that there is no inconsistency between the ultimate finding of the single justice that the petition be dismissed as matter of law, and his subsidiary finding that "the construction of the new addition at Dreamwold provided for a use substantially greater in extent than that for which the building had been used before," and his ruling that "by constructing the addition to Dreamwold, a substantially greater use for the premises was created than existed at the date of the adoption of the zoning by-law."

The question presented is whether the writ ought to issue as matter of law.   *Andrews* v. *Registrars of Voters of Easton*, 246 Mass. 572, 576.   *Shawmut Mills* v. *Assessors of Fall River*, 271 Mass. 358, 360.   The general finding against the petitioner must stand if it can be supported on any rational view of the evidence.   *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 143.   *Bianco* v. *Ashley*, 284 Mass. 20, 26.   We are of the opinion that the petitioner has not, as matter of law, made out a case to require relief.

*Exceptions overruled.*