94 So.2d 832 (1957)
L.B. SMITH AIRCRAFT CORP., a Delaware corporation, Appellant,
v.
Ray E. GREEN, as Comptroller of the State of Florida, and Thomas J. Kelly, as Sheriff of Dade County, Florida, Appellees.
Supreme Court of Florida, Division B.
April 24, 1957.
Rehearing Denied May 22, 1957.
*833 Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, Miami, for appellant.
Richard W. Ervin, Atty. Gen., Phillip Goldman, Asst. Atty. Gen., and Lewis H. Tribble, Gen. Counsel, Tallahassee, for Comptroller, appellees.
DREW, Justice.
This appeal is prosecuted on stipulated facts from a final decree upholding an assessment against L.B. Smith Aircraft Corp. for sales and use taxes, together with interest and penalties.
The facts are stipulated as follows:
"It is hereby stipulated by and between the parties that there are only two issues involved in this case.

"Issue I
"Is the plaintiff taxable under Chapter 212, Florida Statutes, 1953 [F.S.A.], on the sale of aircraft parts sold to persons regularly engaged in interstate or foreign commerce for incorporation into or use on or by their vehicles, not common carriers, which transport or move executives and other employees across state lines or in foreign commerce?

"Agreed Stipulation of Facts Pertinent to Issue I
"1.1. The parties agree that during the period involved the plaintiff sold and delivered in the State of Florida, $63,375.83 worth of aircraft parts to various large companies, all of which shipped their products to and sold their products in numerous *834 (if not all) of the forty-eight states and some in foreign commerce.
"1.2. These aircraft parts so sold by plaintiff were all installed in the State of Florida by plaintiff into aircraft owned by the said customers of plaintiff which they used in their businesses to transport or move their executives and other employees across state lines and/or in foreign commerce.
"1.3. The parties agree that these said aircraft were not used as common carriers but were used by plaintiff's customers to move their own executives and/or employees across state lines and/or in foreign commerce in furtherance of their respective businesses.
"1.4. The parties agree that the undisputed amount of the portion of the sales tax in controversy under this issue and which is attributable to these said sales is $2,509.68 (which includes penalty and interest thereon through April 4, 1955).
"1.5. The parties further agree that this said portion of the tax was not properly assessed and should be set aside if these said sales were sales in interstate commerce within the provisions of Chapter 212, Florida Statutes [F.S.A.] and Rules and Regulations of the Comptroller, lawfully promulgated thereunder.
"1.6. The parties also agree that this said portion of the tax was properly assessed if these said sales were not exempt as sales in interstate commerce under the provisions of Chapter 212, Florida Statutes, 1953 [F.S.A.], and Rules and Regulations of the Comptroller, lawfully promulgated thereunder.

"Issue II
"Is the plaintiff taxable under Chapter 212, Florida Statutes, 1953 [F.S.A.], on the purchase of aircraft parts used by it in the State of Florida in changing old non-certified cargo type aircraft into plush executive certificated passenger type aircraft for resale?

"Agreed Stipulation of Facts Pertinent to Issue II
"II.1 During the period involved, plaintiff in the State of Florida was engaged in the business of buying old cargo type aircraft (which although flown into Miami were not and could not be certificated by the C.A.A. for regular flights without undergoing an 8,000 hour overhaul) and changing these cargo type planes into plush certificated executive passenger type aircraft for resale.
"II.2. The parties agree that during the period involved, the plaintiff purchased $382,349.60 worth of aircraft parts and materials. Plaintiff used these parts and materials in the making of said changes in the said cargo type aircraft and these parts and materials became component parts of the plush executive passenger type airplanes into which the cargo type planes were changed.
"II.3. The character and extent of the activities of plaintiff in using these materials and parts in changing cargo type planes into executive type passenger planes can be determined from the typical representative specifications for such changes (attached hereto as Exhibit A) and pictures of a typical airplane, before, during, and after the changes made by plaintiff (attached hereto as Exhibit B). In this connection it is agreed that the planes involved were DC-3's when the plaintiff acquired them and they were DC-3's when the plaintiff sold them.
"II.4. The parties also agreed that the undisputed amount of the portion of the tax in controversy under this issue is $15,141.04 (which includes penalty and interest thereon through April 4, 1955).
"II.5. The parties further agree that this portion of the tax was properly assessed if the use made in the State of Florida of the materials in changing the said non-certificated aircraft for resale was not an exempt use under the provisions of Chapter 212, Florida Statutes, 1953 [F.S.A.], and Rules *835 and Regulations of the Comptroller lawfully promulgated thereunder.
"II.6. The parties further agree that this portion of the tax is improper and should be set aside if the use made in the State of Florida of these materials in changing the said noncertificated cargo type planes into plush executive passenger type certificated aircraft is an exempt use under the provisions of Chapter 212, Florida Statutes, 1953 [F.S.A.], and Rules and Regulations of the Comptroller lawfully promulgated thereunder."
Appellant and appellees rely upon the Comptroller's rules interpreting the Sales and Use Tax. Such administrative interpretations, although made by an extrajudicial body, have "considerable persuasive force" before a court called upon to interpret the same statute. Harvey v. Green, Fla. 1956, 85 So.2d 829. The statute provides for administrative rules and regulations in Section 212.18(2), Florida Statutes 1955, F.S.A.

Issue I
This issue involves a tax levied on parts installed by the petitioner in Florida on airplanes which were used to transport employees of the owners across state lines and in foreign commerce. The owners are engaged in interstate and foreign commerce; but the airplanes in question were not common carriers. It is clear that Section 212.05, Florida Statutes 1955, F.S.A. imposes a tax on these items unless a specific exemption applies. While the statute as a whole must be read in order to grasp the full impact of its comprehensiveness, the following excerpts from the section labeled "Declaration of legislative intent" are indicative:
"(2) It is hereby declared to be the specific legislative intent to tax each and every sale, admission, use, storage, consumption, or rental levied and set forth in this chapter except as to such sale, admission, use, storage, consumption or rental, as shall be specifically exempted therefrom subject to the conditions appertaining to such exemption. * * *
"(3) It is further declared to be the specific legislative intent to exempt from the tax or taxes or from the operation or the imposition thereof only such sales, admissions, uses, storages, consumption or rentals in relation to or in respect of the things set forth as exempted from the tax, as may be exempted in accordance with the provisions of the constitution of the state and of the United States, and it is further declared to be the specific legislative intent to tax each and every the taxable privileges made subject to the tax or taxes or the operation of the tax or taxes, or the imposition of the tax or taxes except such sales, admissions, uses, storages, consumption or rentals as are specifically exempted therefrom, and such exemption is made only to the extent that such exemption may be made in accordance with the provisions of the constitution of the state and of the United States." Section 212.21, Florida Statutes 1955, F.S.A.
See Gay v. Canada Dry Bottling Co. of Florida, Inc., Fla. 1952, 59 So.2d 788.
Appellant claims the sales are exempt under Section 212.08(3); "Also exempted are vehicles and vessels and parts thereof used to transport passengers or property in interstate and foreign commerce." He also claims exemption under Rule 64 of the Comptroller's Rules and Regulations for the Sales and Use Tax: "Sales in Interstate Commerce. If goods are sold within the State of Florida, but possession is taken by the purchaser without the state the sales tax does not apply. Possession will be considered to be taken by the purchaser without the state if * * * (c) the taxable items are sold to a person regularly engaged in interstate or foreign commerce for incorporation into or use on or by their vehicles which transport or move either passengers *836 or property across state lines or in foreign commerce."
We cannot say with certainty what the Legislature intended to exempt by using the language: parts of vehicles "used to transport passengers or property in interstate and foreign commerce." The broadest interpretation would include parts installed on any vehicle which at some time carried humans or property across a state line or to a foreign country. We think, however, when the entire statute is read and its basic purpose is considered, such a broad interpretation was not intended. It was the manifest purpose in enacting this law to tax as completely within its sphere as organic provisions would allow. e.g. Section 212.21(3). A common understanding of the language "passengers or property in interstate and foreign commerce" would lead to the conclusion that it was used in its narrower sense and relates only to what is more generally referred to as common carriers. An application of this statute to the parts involved in Issue I does not amount to an attempt to regulate or operate to discriminate against interstate commerce and that is what was obviously intended. This is a genuine and clearly legal means of producing revenue from sources which have substantial contact with the state. The "sale" and installation were completed in Florida. The sole remaining question would be whether the tax as applied, unreasonably burdens interstate commerce within the general idea which has been clothed in various terms in pronouncements of the United States Supreme Court. In McGoldrick v. Berwind-White Coal Mining Co., 1940, 309 U.S. 33, 45, 60 S.Ct. 388, 391, 84 L.Ed. 565, the United States Supreme Court announced certain principles in the course of upholding a state sales tax statute, which still appear to be valid in dealing with sales and use taxes:
"In imposing taxes for state purposes a state is not exercising any power which the Constitution has conferred upon Congress. It is only when the tax operates to regulate commerce between the states or with foreign nations to an extent which infringes the authority conferred upon Congress, that the tax can be said to exceed constitutional limitations. * * * Not all state taxation is to be condemned because, in some manner, it has an effect upon commerce between the states, and there are many forms of tax whose burdens, when distributed through the play of economic forces, affect interstate commerce, which nevertheless fall short of the regulation of the commerce which the Constitution leaves to Congress. A tax may be levied on net income wholly derived from interstate commerce. Non-discriminatory taxation of the instrumentalities of interstate commerce is not prohibited * *, courts are called upon to reconcile competing constitutional demands, that commerce between the states shall not be unduly impeded by state action, and that the power to lay taxes for the support of state government shall not be unduly curtailed * * *."
Cf. Braniff Airways, Inc., v. Nebraska State Board of Equalization and Assessment, 1954, 347 U.S. 590, 74 S.Ct. 757, 98 L.Ed. 967, where the U.S. Supreme Court interpreting the commerce clause upheld a state ad valorem property tax levied on flight equipment of a non-domicilliary interstate air carrier. The instant tax as applied is valid under the United States Constitution. Holding, as we do, that the words "used to transport passengers or property in interstate and foreign commerce" has reference to a public business of transport for value, or what is generally understood by the term "common carrier," and since the airplanes involved in Issue I were concededly not within this class, the parts installed on them are not within the exemption.

Issue II
Petitioner contends that parts used to change cargo type planes into executive *837 type passenger airplanes are among those things exempted by Section 212.02(3) (b):
"The terms `retail sale', `sale at retail', `use', `storage' and `consumption' shall not include the sale, use, storage or consumption of industrial materials for future processing, manufacture or conversion into articles of tangible personal property for resale where such industrial materials become a component part of the finished product or are used directly and immediately dissipated in fabricating, converting, or processing such materials or parts thereof, * * *."
We again advert to the plenary operation of Chapter 212, and emphasize the many provisions in the chapter designed to prevent multiple taxes on the same items. See Sections 212.05(2); 212.06 (4); 212.07(7); 212.12(11). With this in view we must examine Section 212.08 (4) (a) which, among other things, provides: "Also exempted from the tax imposed by this chapter are * * * motor vehicles * * * (not including parts thereof when sold as separate transactions)." The laws of this State treat aircraft as motor vehicles for purposes of tax exemption under Florida Constitution, Article IX, Section 13, F.S.A. See Section 330.06, Florida Statutes 1955, F.S.A. In compliance with this requirement the comptroller has promulgated a rule which reflects such legislation and gives full effect to the specific language of Section 212.08 (4) (a). This rule provides:
"Ordinarily the sale of used and second hand property is subject to the sales or use tax. Therefore, parts, supplies, and materials used in rebuilding or reconditioning such used and second hand property for resale are exempt. However, as rebuilt or reconditioned used and second hand motor vehicles, airplanes, and motor propelled agricultural equipment are exempt from the sales tax, parts, supplies and materials used in rebuilding or reconditioning such property are subject to the sales or use tax." Rule 6(7).
This rule is clearly consistent with the act and was properly applied in the instant case.
Both taxes were correctly exacted under Chapter 212, therefore, the decree appealed from is hereby
Affirmed.
TERRELL, C.J., and HOBSON and O'CONNELL, JJ., concur.