WIGGINTON, Judge.
This cause is before the court on questions certified by the Circuit Court of the Eighth Judicial Circuit for Alachua County pursuant to the provisions of Rule 4.6, Florida Appellate Rules, 32 F.S.A. The questions or propositions of law so submitted are certified to be determinative of the cause and are without controlling precedent in this state. We find such certificate to be correct and that instructions from this court will facilitate the proper disposition of the cause. Jurisdiction is therefore accepted.
The questions submitted for consideration concern the proper allocation and distribution to municipalities within a county of funds budgeted by the county for road and bridge purposes.
The parties have agreed upon a stipulated statement of facts which controls the consideration of the questions propounded by the certificate. The statement is as follows:
“STATEMENT OF FACTS
“1. The Defendant ALACHUA COUNTY is a political subdivision of the State of Florida; the PLAINTIFF and remaining DEFENDANTS are all municipal corporations organized and existing under the laws of the State of Florida with their territorial boundaries lying and situated wholly within the territorial boundaries of the Defendant ALACHUA COUNTY.
“2. The pertinent parts of Florida Statutes of 1969 which are involved in this suit are as follows:

“Section 129.01

‘There is hereby established a budget system for the control of finances of the boards of county commissioners of the several counties of the state, as follows:
‘(1) There shall be prepared, approved, adopted, and executed, as prescribed in this chapter, for the fiscal year ending September 30, 1952, and for each fiscal year thereafter, an annual budget for the following funds:
‘(a) General fund
‘(b) Road and bridge fund
‘(c) Fine and forfeiture fund
‘(d) Capital outlay reserve fund
‘(e) Bond interest and sinking fund, and
‘(f) Special district operating fund
‘which shall control the levy of taxes and the expenditure of money for all county purposes during the ensuing fiscal year.’
* * * * * *

“Section 336.59

‘(1) The commissioners shall levy a tax not to exceed ten mills on a dollar on all property in their county each year for road and bridge purposes. Such tax, when collected, shall be paid over to the county depository and kept in a separate fund, which fund shall not be expended for any other purpose than for work on the public roads and bridges in the county, and for the payment of the salaries of employees engaged in road and bridge work, and in providing the necessary tools, materials, implements and equipment and for the necessary work on such roads and bridges.
‘(2) One-half the amount realized from such special tax on the property in incorporated cities and towns, shall be turned over to such cities and towns, to be used in repairing and maintaining the roads and streets thereof, as may be provided by the ordinances of such cities and towns.’
*65 “Section One, Article IX of Chapter 14450, Laws of Florida 1925 (which is the present municipal charter of the City of Waldo) :

“ROAD AND BRIDGE TAXES.— That one-half of the amount realized from any and all road and bridge taxes levied on property within the City of Waldo by the County Commissioners of Alachua County, shall be turned over annually to the municipal authorities of the said City, to be used in repairing, working, improving and laying out the streets and bridges thereof, as may be described by ordinance.”

“In 1951, the Florida Legislature enacted Chapter 27383, Laws of 1951 exempting Alachua County from complying with the provisions of said Section 336.59. Thereafter Chapter 59-1041, Laws of 1959 was enacted by the Florida Legislature repealing said Chapter 27383 effective 1 January 1960.
“3. Commencing 1 January 1960 the Defendant ALACHUA COUNTY has been funding the County Road and Bridge Fund portion of the County budget with monies derived from County revenue sources other than and in addition to the assessment of special property taxes provided for by said Sec. 336.59(1). Thus for the fiscal year 1969-1970, the Defendant COUNTY funded the Road and Bridge Fund part of its budget from the following sources:
(1) Gasoline Tax;
(2) Race Track Funds;
(3) A carry-over from the Road and Bridge Fund fiscal 1968-1969; and
(4) Special Property Tax under Sec. 336.59(1).
“4. From the total amount of the said Fund as budgeted for 1969-1970, the Defendant COUNTY allocated and turned over to the respective several municipal parties here for road and street repair and maintenance, 50% of that part of said Fund realized from the special tax on property within the incorporated limits of each of said respective municipal parties, which part represented only a small portion of the total amount budgeted in the Fund by the Defendant COUNTY for road and bridge purposes within the COUNTY.
“5. PLAINTIFF and the other DEFENDANT municipal parties here contend that the Defendant COUNTY’S said method of funding the Road and Bridge Fund budget from County revenue sources other than by the special tax on property provided for by said Section 336.59, has the practical effect of denying to said municipalities a source of revenue intended by the legislature to be available to such municipalities for the repair and maintenance of roads and streets within said municipalities, which otherwise would be available under Sub-Section (2) of the said Section 336.59 if said Fund as budgeted was funded entirely by revenue realized from said special property tax provided for in Sub-Section (1) of said Section 336.59.
“6. Defendant, COUNTY, contends as follows: (a) that the provisions of Section 336.59 do not require that the Road and Bridge Fund when budgeted, be funded solely from revenue from said special tax; (b) that the Defendant, COUNTY, is permitted and required to use the revenue sources stated in Paragraph 3 herein in the Road and Bridge Fund; and (c) that the Defendant, COUNTY, is required to comply with the ‘refund to municipalities’ provisions of Subsection (2) of Section 336.59 only to the extent that the Road and Bridge Fund part of the budget is funded from revenue realized from the assessment of said special tax on the non-exempt property within the municipalities.”
Based upon the agreed facts set forth above and the contentions urged by the *66 respective parties to this proceeding, the following questions evolve:
QUESTIONS
“FIRST
“In preparing the annual budget required by Sec. 129.01 of Florida Statutes, 1969, is a Board of County Commissioners of a County obligated to provide and fund each year a ‘Road and Bridge Fund’?
“SECOND
“If a Board of County Commissioners of a County provides for a Road and Bridge Fund as an item in its annual budget, is such Board obligated to fund the same by revenue realized from the assessment of the special tax on property provided for in Section 336.59(1) of Florida Statutes 1969; or may such Board fund the same by allocating thereto monies realized from other county revenue sources?
“THIRD
“If a Board of County Commissioners of a County has the discretion of funding the Road and Bridge Fund part of its annual budget from County revenue sources other than the special property tax provided for by Sub-Section (1) of Section 336.59 of Florida Statutes 1969, is the participation of the municipalities within the County under Sub-Section (2) of said Section limited to 50% of only that part of the Road and Bridge Fund which is realized from the special property tax on property within each said municipality; or must such Board compute said 50% refund on the basis of the total amount budgeted for road purposes within the County without regard to the source of funding?”
In response to the first question, it is our view and we so hold that in preparing the annual budget required by F.S. Section 129.01, F.S.A., a board of county commissioners is obligated to provide and fund a “Road and Bridge Fund”. Only in the event a county enjoys the unique distinction of having no roads or bridges to build or maintain during the ensuing budget year would the county be relieved of complying with the mandatory requirements of the foregoing statute.
The second question raises the issue of whether the road and bridge fund of the county must be funded exclusively from a special ad valorem tax levied against the taxable property within the county, or may be wholly or partially funded by anticipated revenues to be realized from other sources.
Section 129.02 of the statute which specifies the requisites of a county budget provides in pertinent part as follows:
“(2) The road and bridge fund budget shall contain an estimate of receipts by source and balances as provided herein, and an itemized estimate of expenditures that need to be incurred to carry on all work on roads and bridges in the county except that provided for in the capital outlay reserve fund budget and in district budgets pursuant to this chapter, and of unpaid vouchers of the road and bridge fund; also of the reserve for contingencies and the balance, as herein-before provided, which should be carried forward at the end of the year.”
F.S. Section 129.03(2) (a), F.S.A., also provides:
“ * * * the board may allocate to any of the funds of the county any anticipated receipts, other than taxes levied for a particular fund, except receipts designated or received to be expended for a particular purpose.”
From the foregoing it seems apparent that the legislature intended that the county, in the preparation of its budget,, could in its discretion include in the road and bridge fund receipts from more than one source of anticipated revenue lawfully applicable for road and bridge purposes.
The stipulated statement of facts establishes that commencing with January 1, *67 1960, and in each year thereafter, Alachua County’s road and bridge fund portion of the county budget has included revenues derived not only from a special ad valorem tax levied against the taxable property in the county but also revenues received from the State of Florida as the county’s alloca-ble share of the second[1] and additional[2] gasoline tax and tax on pari-mutuel betting.[3] The statute levying the additional one cent gasoline tax [4] specifically provides it to be the legislative intent that the funds derived pursuant to that statute shall be used in such manner as to reduce the burden of ad valorem taxes in the several counties. The statute providing for the allocation to the several counties of a portion of the revenues derived from the tax on parimutuel betting specifies that:
“ * * * the county commissioners of the several counties may determine whether such moneys, or any part thereof, shall be converted into the county school fund, or to some other lawfully authorized fund, * * [5]
The court judicially notices the State Comptroller’s Report of County Finances for the year 1969 which reveals that thirty-one of the sixty-seven counties of Florida include race track receipts in their road and bridge fund budgets, all of which budgets have been approved by the Comptroller pursuant to the authority vested in him by law.[6] Although such administrative interpretation of a regulatory statute is not binding on the courts, it is highly persuasive and will not ordinarily be disturbed unless shown to be clearly erroneous.[7]
From the foregoing it would affirmatively appear that a county road and bridge fund is not required to' be funded exclusively from a special ad valorem tax levy against the taxable property in the county, but may be funded either in whole or in part from other lawful sources of anticipated revenue not designated for a particular purpose so long as such sources are sufficient to meet the road and bridge requirements of the county for the ensuing budget year.
Question three presented for decision outlines in bold relief the overriding power struggle being waged between the county and municipal authorities for operating revenues. The answer to this question will determine which set of governmental officers will be required to accept the onus and bear the responsibility for levying additional ad valorem tax millage against property lying within municipalities for the construction and maintenance of city streets.
The maintenance and construction of public roads and bridges has been a major governmental function ever since Florida attained statehood as evidenced by the statute adopted at its first legislative session which provided for the working and maintaining of public roads.[8] This statute required all able-bodied males to work a stipulated number of days each year on the public roads and highways of the county.[9] Required work for construction and maintenance of public roads was considered a burden' of citizenship falling within the same category as duty with the militia and on juries.[10]
*68 The first county road act authorized in 1846 by Florida’s second legislative session was applicable only to Duval County.[11]
The second county road act enacted in 1874 continued to require work on the public roads and highways by able-bodied males, but permitted the right of commutation at the rate of $1.00 per day.[12] This act was amended in 1881 by a provision which relieved persons living within incorporated municipalities from the obligation of working on public roads and highways outside of the municipal limits.[13]
The third county road act enacted in 1891 contained the first statutory authorization for the levying of an ad valorem tax for road and bridge purposes in lieu of conscripting citizens for road duty.[14] This statute contained two exceptions relating to municipalities as follows: (1) in the counties which did not impose a road and bridge tax in lieu of road duty, male citizens living within the limits of municipalities who paid city taxes continued to be exempt from county road duty; and (2) counties which did elect to levy an ad valorem tax for road and bridge purposes were required to turn over to the municipalities one-half of the sum realized from the tax levied for road and bridge purposes on property within the municipal limits. The refunding provision of this early statute has been carried forward in the statutory law of Florida down to the present time.[15]
From the foregoing history of our laws relating to the construction and maintenance of public roads, bridges and highways, it appears to have been the legislative intent that the responsibility for carrying out this governmental function outside of the corporate limits of municipalities is imposed exclusively on county officials, while the corresponding responsibility for constructing and maintaining the streets and bridges within cities and towns is imposed exclusively upon municipal authorities.
Reverting to the provision of law which we consider to be controlling in the resolution of this question, we find in subsection (1) thereof the. authority under which county commissioners may levy an ad valorem tax against all property within the county for road and bridge purposes. Subsection (2) relating to municipalities provides:
“One-half the amount realized from such special tax on the property in incorporated cities and towns, shall be turned over to such cities and towns, to be used in repairing and maintaining the roads and streets thereof, as may be provided by the ordinances of such cities and towns.” [16]
A literal reading of the foregoing statute impels the conclusion that the only revenues which a county is required to share with municipalities within its geographical boundaries are those realized from an ad valorem tax levy on property within the county for road and bridge purposes. There is no mandatory requirement in this or any other statute that any tax revenues other than those realized from an ad valorem tax levy for road and bridge purposes must be shared by the counties with the cities and towns located within' its boundaries.
Plaintiff City of Waldo, and the municipalities which have joined it in this litigation, proposes that the foregoing statute be so construed as to require a sharing by *69 the county with its municipalities of all sources of revenue which are budgeted to and included within the road and bridge fund of the county regardless of the origin of such funds or the purpose for which they have been received. With this contention we are unable to agree. In the first place, the record reveals that the largest portion of revenues budgeted to the road and bridge fund of Alachua County is derived from state sources of taxation which are allocated to counties to be used for what has been determined to be joint state-county purposes. In addition, there is no statutory formula by which gasoline tax and tax on pari-mutuel betting received by the counties from the state and budgeted to its road and bridge fund could or should be divided among the municipalities of the county.
It is our view and we so hold that counties are authorized under the laws of this state to budget as all or part of its road and bridge fund sources of revenue other than ad valorem tax on property within the county which are not required by law to be expended for other special purposes. None of the revenues so budgeted for the road and bridge fund of the county are required to be shared on an allocable basis with the municipalities lying within the county. Only to the extent of revenues derived from an ad valorem tax levy against property within the municipalities of the county for road and bridge purposes is that fund required to be shared on an equal basis with such municipalities. We believe this construction to be consistent with the statutory and decisional law of this state and with the legislative intent of our lawmaking body. If county revenues are to be shared with the incorporated cities and towns of Florida on any basis other than that presently authorized, then such plan should be pursuant to a valid act of the legislature and not by judicial edict or fiat.
CARROLL, DONALD K., Acting C. J., and McLANE, RALPH M., Associate Judge, concur.

. Art. XII, § 16, Fla.Const.1885, F.S.A.

. F.S. § 208.44, F.S.A.

. Ch. 550, F.S.

. Supra note 2.

. F.S. § 550.14, F.S.A.

. F.S. § 129.03, F.S.A.

. L. B. Smith Aircraft Corp. v. Green, (Fla.1957) 94 So.2d 832.

. Ch. 53, Laws of Florida, Acts of 1845.

. Ch. 53, § 9, Laws of Florida, Acts of 1845.

. Galloway v. Town of Tavares, (1896) 37 Fla. 58, 19 So. 170.

. Ch. 100, Laws of Florida, Acts of 1846.

. Ch. 2007, Laws of Florida, Acts of 1874.

. Ch. 3295, Laws of Florida, Acts of 1881.

. Ch. 4014, Laws of Florida, Acts of 1891.

. F.S. § 336.59, F.S.A.

. F.S. § 336.59(2), F.S.A.