283 So.2d 65 (1973)
HILLSBOROUGH COUNTY ENVIRONMENTAL PROTECTION COMMISSION (Formerly Hillsborough County Pollution Control Commission) and Roger Stewart, Director of Environmental Protection Commission, Petitioners,
v.
FRANDORSON PROPERTIES, Respondent.
No. 73-152.
District Court of Appeal of Florida, Second District.
September 19, 1973.
*66 Robert H. Mackenzie, Tampa, for petitioners.
Charles F. Clark and Ted R. Manry, III, of Macfarlane, Ferguson, Allison & Kelly, Tampa, for respondent.
SCHWARTZ, ALAN R., Associate Judge.
The Hillsborough County Environmental Protection Commission, an agency created by and operating pursuant to the Hillsborough County Pollution Control Act, Chapter 67-1504, Laws of Florida, and its Director, have brought this petition for common law writ of certiorari to review a decision of the Hillsborough County Circuit Court, sitting as an appellate court, which, on several grounds, reversed a decision of the Commission's Hearing Panel. Since we agree with the Circuit Court's determination that the controlling statute does not proscribe the conduct of the respondent which was sought to be precluded by the Hearing Panel, we deny the petition.
While the factual and procedural history of the case is complex, the question presented for determination is a simple one: whether the applicable statute forbids the deliberate destruction of red mangroves growing in tidal waters  and any consequent ecological imbalance and environmental damage caused by that destruction  by an owner, such as the respondent here, of the area in which the mangroves grow. As did the Circuit Court, we hold that it does not.
The respondent, Frandorson Properties, is the owner of a waterfront area known as Apollo Beach in Hillsborough County. In the course of the "development" of its property it contracted with the Seward Dredging Company to remove the growth in a mangrove area along the shoreline. Pursuant to that contract, Seaweed began to bulldoze and thus destroy the mangroves in the Frandorson owned area. This process continued apparently until October 26, 1971 when the Director of the Commission issued a so-called Citation to Cease Violation directed to Frandorson which stated that its mangrove-destroying activities "below the line of mean high water of Hillsborough County" were in violation of Sec. 14(1) of the Pollution Control Act which provides:
"Section 14. Prohibitions against pollution. 
It is prohibited and shall be unlawful for any person:
(1) To throw, drain, run, or otherwise discharge into the waters of the county, or to cause, permit or suffer to be thrown, run, drained, allowed to seep or otherwise discharged into such water any organic or inorganic matter that shall cause or tend to cause a polluted condition of such water or cause water pollution as herein defined, and as restricted by the rules and regulations of the commission."
"Water pollution" is in turn defined as follows in Sec. 3(21):
"(21) `Water pollution' shall mean the introduction in any surface or underground water, or tidal salt water, or any organic or inorganic matter or deleterious *67 substance in such quantities, proportions or accumulations which are injurious to human, plant, animal, fish, and aquatic life, or property, or which unreasonably interferes with the comfortable enjoyment of life or property, or the conduct of business."
The Citation required Frandorson both to cease further destruction of the mangroves in the area in question and to repopulate those it had already destroyed within 60 days of the date of the order.
As the Act permits, Frandorson "appealed" the Citation to the Commission's Hearing Panel. The thrust of the Director's position before the Hearing Panel was that the admitted mangrove destruction amounted to "water pollution" under the Act because of the loss of organic materials which had been produced by and were intimately associated with the living mangroves and which had in turn resulted in a deterioration of the ecological quality of the waters involved. After an evidentiary hearing and a deliberative process which unaccountably included an ex parte view of the area in question, the Hearing Panel affirmed the Director's order and itself ordered both its prohibitory and mandatory requirements enforced against Frandorson. Again as the statute, specifically Sec. 9, permits, Frandorson next "appealed"[1] to the Hillsborough County Circuit Court for review of the Hearing Panel's decision. The Circuit Court reversed that decision in its entirety on both procedural and substantive grounds and the Board sought common law certiorari review here.
In this proceeding, the Board contests only the Circuit Court's reversal of its prospective order precluding future mangrove destruction below the mean high water mark.[2] It contends only that the Circuit Court erred in holding that the statute did not preclude as "water pollution" the destruction of the mangroves.[3]
While we disagree with the petitioners' contention as to this issue, we do not dispute, indeed, we endorse, the thoughtful concern with our natural environment and the principles of ecology which inspired the enactment of the Pollution Control Act. Nor do we doubt either the petitioners' contention that, as a matter of fact, the destruction of the red mangroves has a severe adverse ecological effect upon the *68 tidal waters involved here, cf. Proposed Rule 17-12.01, State Department of Pollution, or the fact that the Legislature possesses the power, in order to promote the quality of our environment, to forbid the destruction of the mangrove area even by a landowner upon his own property. See Zabel v. Tabb, 5 Cir.1970, 430 F.2d 199, cert.den., 401 U.S. 910, 91 S.Ct. 873, 27 L.Ed.2d 808 (1971), Just v. Marinette County, 56 Wis.2d 7, 201 N.W.2d 761. But the question before us is not whether the practice should or could be forbidden, but rather only whether it has been. Upon a straightforward reading of the unambiguous language of the controlling statutory provisions we cannot do otherwise than to hold that it has not.
Everything in those provisions concerns solely attempts by the Legislature to define and to prevent "water pollution" in terms of depositing or permitting foreign substances  animal, vegetable, and mineral  to be discharged into the waters of Hillsborough County. Nothing, fairly read,[4] forbids the destruction or removal of organic or inorganic materials already present or growing there. We need only apply the rule which requires the courts to follow plain and clear statutory language, which leaves no room for doubt as to the legislative intent,[5] State ex rel. Florida Jai Alai, Inc. v. State Racing Commission, Fla. 1959, 112 So.2d 825, to conclude that the Circuit Court was right, and the commission wrong, in their respective interpretations of the statute.
Certiorari denied.
LILES, A.C.J., and McNULTY, J., concur.
NOTES
[1] Upon initial review of the proceedings below, we were at first concerned with the fact that the Notice of Appeal and the other appellate papers were filed, not in the lower tribunal, that is, the Commission, but directly in the Circuit Court. See State ex rel. Diamond Berk Ins. Agency v. Carroll, Fla. 1958, 102 So.2d 129. We conclude, however, that the reference to "appellate" review in the Circuit Court, as contained in Sec. 9 of the statute, did not  in view of the informal nature of the proceedings contemplated before the Commission  incorporate the full panoply of the procedures required to perfect a formal "appeal" under the Florida Appellate Rules, and that the papers timely filed in the Circuit Court in this case were jurisdictionally more than sufficient to permit the Circuit Court review which was contemplated by the statute.
[2] The Board appears to concede the impropriety of its fact-finding process and its lack of statutory authority to require the replanting of mangroves already destroyed.
[3] Our determination to the contrary of the Board's position pretermits the necessity of directly ruling upon two additional arguments presented on behalf of the respondent to the effect (a) that the Board's order is invalid because the "mean high water mark" in the area in question has never been "properly" established; and (b) that the peremptory unilateral effect of the Director's initial order deprived it of its due process rights to a prior adversary proceeding as established most forcefully by the Supreme Court in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). As to the first contention, however, we note both that the respondent's own representative testified to its own location of the "mean high water mark" and, more importantly, that the Board's authority under the statute as to polluted waters seems not in any event to depend at all upon the precise location of the waters in question. Frandorson's Fuentes point seems well taken; its complaint as to the procedure in this particular case has been mooted however, because of the fact that the only Board action now before us, the prospective order, followed an adversay hearing before the Hearing Panel.
[4] We need not rely upon the rule of statutory construction invoked by the respondent, to the effect that restrictive or punitive legislation should be strictly construed, e.g., Florida Livestock Board v. Gladden, Fla. 1954, 76 So.2d 291, to reject what we think must be the tongue-in-cheek claim of the Board that the use of the bulldozers constitutes a "discharge" of "inorganic matter" forbidden by Sec. 14(1). Indeed, the Commission's own rules, adopted pursuant to the statute, deal only with the discharge of various foreign substances or materials in quantities deemed dangerous to the ecological balance. Of course, the interpretation given a statute, through the adoption of governing rules, by the administrative body responsible for its enforcement is most persuasive as to its proper construction, e.g. L.B. Smith Aircraft Corp. v. Green, Fla. 1957, 94 So.2d 832; Miller v. Brewer Co. of Florida, Inc., Fla. 1960, 122 So.2d 565, particularly when the agency's rule-making "interpretation" is, as it is here, contrary to the one later urged by the agency itself.
[5] Even a "liberal construction" of the statute mandated by Section 21 (assuming arguendo its applicability to the highly regulatory provisions involved here) could not lead to a different result.