SCHWARTZ, Chief Judge.
Because the petitioner, as the purchaser of property upon which a nonconforming prior use for an operation of a truck maintenance facility had been previously granted by the Dade County Department of Environmental Resources Management (DERM), was absolutely entitled to the reis-suance of such a permit in its own name under the applicable “changes in ownership” provision of the Dade County Code,[1] we *353 quash the appellate division’s failure to quash the denial of such a permit by the Dade County Environmental Quality Control Board.
The respondents’ position to the contrary is based on the claim that the proposed use would tend to continue an allegedly dangerous source of pollution to Dade County’s potable water supply and that the petitioner had somehow forfeited its rights by the fact that, largely because of its predecessor’s financial difficulty and bankruptcy, the facility in question had not been actually used on the property for a lengthy period. We do not doubt either the correctness or validity of the environmental concerns expressed by the county, or the fact that it may have the authority to legislate such conditions upon the continuation of nonconforming uses as are now suggested. See 7 Fla. Jur.2d Building, Zoning, and Land Controls §§ 206-207 (1997), and cases cited; 4 Rathkopfs The Law of Zoning and Planning §§ 51B.01-05 (4th ed.1997).[2] However,
the question before us is not whether the practice should or could be forbidden, but rather only whether it has been.
Hillsborough County Environmental Protection Commission v. Frandorson Properties, 283 So.2d 65, 68 (Fla. 2d DCA 1973). As was the case in Frandorson, 283 So.2d at 68, and Context Development Co. v. Dade County, 374 So.2d 1143, 1149 (Fla. 3d DCA 1979),
[u]pon a straightforward reading of the unambiguous language of the controlling ... provisions we cannot do otherwise than to hold that it has not.[3]
Inasmuch as no conditions to the lawful use of one’s property may be governmentally imposed in the absence of duly enacted legislation to that effect, see Nash v. Fort Lauderdale Board of Adjustment, 462 So.2d 88 (Fla. 4th DCA 1985); City of Naples v. Central Plaza of Naples, Inc., 303 So.2d 423 (Fla. 2d DCA 1974); Rose. v. Town of Hillsboro Beach, 216 So.2d 258 (Fla. 4th DCA 1968), we must conclude that, however worthy and attractive the respondents’ position may be, it cannot be sustained under the law.
Certiorari granted.

. (5) Protection of hazardous materials within wellfield protection area. Notwithstanding any provisions of this Code, no County or municipal officer, agent, employee or Board shall approve, grant or issue any building permit, certificate of use and occupancy (except for changes in ownership ), municipal occupational license (except for changes in ownership), platting action (final plat, waiver of plat or equivalent municipal platting action) or zoning action (district boundary change, unusual use, use variance or equivalent municipal zoning action) for any nonresidential land use, other than a bona fide agricultural land use, a bona fide rockmining use (like excavation), a public sewer facilities use, or a public water supply facilities use, within the Northwest Well-field protection area or within the West Wellfield Interim protection area or within the maximum day pumpage wellfield protection area of the Alexander Orr Wellfield, Snapper Creek Well-field, Southwest Wellfield, Miami Springs Lower Wellfield, John E. Preston Wellfield, or Hialeah Wellfield or within the basic wellfield protection *353 area of any public utilily potable water supply well, without obtaining the prior written approval of the Director of the Department of Environmental Resources Management or his designee. The director or his designee shall issue his written approval only if the Director or his designee determines that the nonresidential land use is in compliance with subsections 24-12.l(5)(a), 24-12.l(5)(b) or 24-12.1(5)(c). [emphasis supplied] Section 24-12.1(5), Dade County Code.

. But see 7 Fla. Jur.2d Building, Zoning, and Land Controls § 208, at 666 (1997)("Inasmuch as a nonconforming use relates to the property and not to the type of ownership, a change in the type of ownership of real estate will not destroy a valid existing nonconforming use."); Miami Beach v. Arlen King Cole Condominium Ass’n., 302 So.2d 777 (Fla. 3d DCA 1974), cert. denied, 308 So.2d 118 (Fla. 1975); Paul v. Selectmen, 301 Mass. 365, 17 N.E.2d 193 (1938)(right to nonconforming use not lost by two years of non-use of premises, where the former owner went into bankruptcy, the property was sold, and the restaurant use was not attempted to be resumed until after the two-year period); 4 Rathkopfs The Law of Zoning and Planning § 5IB.02, at 51B25-26 (4th ed.l997)("where there is a period of nonuse because of the financial inability of the owner to continue in business, ... the requisite intent to abandon is lacking, and the right to resume the nonconforming use when opportunity presents itself is not lost’’)(footnotes omitted).

. Indeed, neither this nor any other pertinent section of the code contains any provision whatever as to the abandonment or discontinuance of a preexisting nonconforming use.