PER CURIAM.
We have before us for disposition several original proceedings brought to review the order of the Board of Business Regulation setting the 1972-73 dates for the three greyhound pari-mutuel tracks operating in Dade County. These suggestions and petitions were filed in the Supreme Court of Florida[1] and transferred to us by order of that court. Following the precedent of the Supreme Court of Florida we do not consider the petitions separately. West Flagler Associates, Ltd. v. Division of Pari-Mutuel Wagering, Fla.1971, 251 So.2d 856. But we will, of course, consider the positions and arguments of each of the opponents and proponents of the Board’s order.
These consolidated petitions seek review of the order of the Board of Business Regulation dated February 21, 1972. The contending tracks are West Flagler Associates, Ltd., Miami Beach Kennel Club, Inc., and Biscayne Kennel Club, Inc. Although separate arguments are advanced, West Flagler and Miami Beach urge that the Board’s order should be quashed in whole or in part and Biscayne supports the order. In outline, the order provides:
West Flagler September 5, 1972 through January 3, 1973
Miami Beach January 4, 1973 through May 4, 1973
Biscayne May 5, 1973 through September 4, 1973
West Flagler argues that the order should be quashed because, in its view, the decision is totally contrary to the factors established for the fixing of racing dates, and the decision is unsupported by the evidence submitted to the Board. We have reviewed the decisions of the Supreme Court of Florida concerning the subject of racing dates as cited to us and we find that the factors established for consideration in the setting of racing dates are summarized in State ex rel. West Flagler Kennel Club, Inc. v. Florida State Racing Commission, Fla.1954, 74 So.2d 691:
******
“Since the 1947 amendment racing dates are apportioned to the counties ‘as provided by law’. We do not hold that the latter amendment had the effect of removing the requirement that racing dates be fixed in a fair and impartial manner but we do hold that it enlarged the discretion of the State Racing Commission and authorized it to consider not only the interest of those operating race tracks but the interest of the State as well when it fixed racing dates.”
‡ # íj: %
“Relator advances argument to show the fallacy of this conclusion but considered in the light of all the factors that respondents were required to consider in fixing racing dates, that is to say the interest of the track owner, the interest of the State, the good will, the quality of dogs, track facilities, geography, skill in *25 management, and others, the results reveal nothing to show discrimination.”
* * * * * *
In the case at bar, the Board of Business Regulation, in its order, supported its allocation of dates, in part, as follows:
******
“(4) The Board finds that the dates hereinafter awarded meet the criteria set forth by case law and will help assure the state receiving the greatest revenue. In addition, the case of West Flagler [Associates] v. Department [Board] of Business Regulation [Fla.], 251 So.2d 855 (1971), when read in light of the recent case of Gulf Stream Park Racing Association, Inc. v. Division of Pari-Mutuel Wagering, et al. [Fla.], 253 So.2d 429 (1971), indicates that the so called summer dates were to be run by West Flagler and Biscayne in the summers of 1972 and 1973 respectively, so that there would be comparative data on the performances to make further awards. The Board also notes that the Supreme Court has indicated that it opposes the idea of split dates. West Flagler has been awarded the summer dates for the past four years; Biscayne last having the summer dates in the summer of 1968, which were prior to a $2,250,000.00 expansion and remodeling expenditure by Biscayne. Therefore, in order to afford equality of opportunity to Biscayne and to arm the Board with information necessary to make equitable awards of dates in the future, the Board finds that it should award Biscayne the so called summer dates.”
Our review of the transcript of proceedings before the Board establishes to our satisfaction that the Board exercised a reasonable discretion in its determination of the factors established for the fixing of racing dates. Furthermore, in the cases of Gulfstream Park Racing Association, Inc. v. Division of Pari-Mutuel Wagering, Fla.1971, 253 So.2d 429, and Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, Inc., Fla.1971, 245 So.2d 625, the Supreme Court stated that the awarding authority must apportion racing dates so as to award tracks of comparable facilities a substantially equal opportunity for the beneficial enjoyment of their permits and the realization of their permit opportunities. In fact, in Hialeah Race Course, supra, the Supreme Court declared Fla. Stat. § 550.081, F.S.A., unconstitutional because it failed to provide this equality of opportunity. See also State ex rel. West Flagler Amusement Co. v. Rose, 122 Fla. 227, 165 So. 60 (1935). Consequently, equality of opportunity among comparable track facilities is an important factor in allocating racing dates. The perpetual assignment of the choice summer dates to one track, while denying these dates to another track of equal size and ability to entertain the public and produce revenue for the State, would be a gross abuse of discretion. The Board properly considered this additional factor in allocating the summer or best racing dates to Biscayne for the coming year.
We find merit in the position advanced (apparently for the first time) by counsel for Miami Beach, that allocation of dog racing dates on a calendar year basis is improper because the law provides for selections of dates by dog racing per-mittees (or allocations thereof by the Board when required) to be made on a fiscal year basis.
The provision of the legislature to that effect seems clear. Fla.Stat. 550.083(1), F.S.A., as amended by § 1, Chapter 69-250, Laws of Florida 1969, provides:
“Owners of valid outstanding permits for dog racing in this state may hold race meetings at any time they choose during the fiscal year for the aggregate number of racing days fixed and permitted by law and subject to the approval of the state racing commission; provided, that no racing shall be conducted on Sunday.”
The reasons which were presented in argument for ignoring that express provision *26 of the law appear to be insufficient. One was that subsequent to enactment in 1969 of the above fiscal year provision, the Board has continued the selections and allocations of dates on a calendar year basis, and that in cases in which the Supreme Court has considered questions relating to allocations of dates so made since 1969, the Court tacitly has approved the calendar year basis as opposed to the statutorily provided fiscal year basis therefor. That argument is without force. Failure of the Board to follow the statute could not vitiate the law; and in the matters which were before the Supreme Court, as referred to, the Court was concerned with other questions, and it does not appear that this precise question was presented or considered. Another argument was that in prior legislation relating to dog racing references were made to allocation of dates for a “racing season,” and that the term “racing season” also appears in subsequent legislation relating to dog racing. That argument lacks merit. Formerly, when dog racing was limited to a period beginning in November and extending to some time in the spring it was natural in dealing with requests and allocations of dates to refer to the period for which dog racing was allowed as the “racing season.” But since the legislature expanded the period for dog racing to authorize it at any time in the year, there no longer is such a part year “racing season,” and subsequent use of that term necessarily has reference to a full year as the “racing season” for dog racing. If that circumstance did not prompt the passage of the above quoted provision in 1969 relating to the fiscal year basis, at the least it is thoroughly consistent therewith.
The making of date selections or allocations on a fiscal year rather than calendar year basis may have a certain practical effect. In Dade County the racing time of 105 days allowed to each of the three tracks will take up the entire year, excluding Sundays, in the absence of overlapping of dates. In Dade County, for dog racing, contrary to horse racing, the summer season is regarded as the choicest. Next preferred is the fall and early winter season, and of least choice is the late winter and spring season. However, the summer season dates, as selected or allocated on a calendar year basis have been from early in May to early in September, thus bridging from one fiscal year into another.
For the reasons stated, we view as correct the argument that the law calls for selections and allocations of dates for dog racing permittees to be on the fiscal year basis, so that in the future the law in that respect should be followed by the Board, but since the question was not presented to the court sufficiently in advance of the allocation of dates with which we are now concerned, the failure of the Board to so proceed with regard to the present allocations should not be disturbed.
The second ground upon which Miami Beach urges that the order of the Board should be quashed is that the Miami Beach track must be awarded the fall racing dates which it requested in its application because no other track requested these dates. Miami Beach, in its application for racing dates, requested the period September 5, 1972, through January 4, 1973. Biscayne, in its application, requested the summer dates, 1973, and by an attachment to its application,. also requested the fall dates, 1972 (Sept. 5 through Jan. 4), but expressly stated: “This petition to be an alternative one, only in the event its request for the summer dates May 8th, 1973 thru September 6th, 1973 inclusive should be denied.” It is pointed out by the express terms of Fla.Stat. § 550.083, F.S.A., that permit holders ". . . may hold race meetings at any time they choose subject to the approval of the state racing commission. . . . ”
Miami Beach’s position was adopted by the Supreme Court of Florida in West Flagler Associates, Ltd. v. Division of Pari-Mutuel Wagering, Fla.1971, 251 So.2d 856, under the circumstances of that case. In that situation, the Division of Pari-Mu- *27 tuel Wagering (now abolished and its duties assumed by the Board of Business Regulation) on May 14, 1971, awarded Miami Beach the dates September 3, 1971 through January 3, 1972 as it requested. Then the Board of Business Regulation reviewed the action of the former Division of Pari-Mutuel Wagering, and by its order of January 21, 1971 reached different conclusions and findings and made a new and different split date assignment of the various racing dates. The Supreme Court found that the Board had changed Miami Beach to the less remunerative winter season dates, and split the fall season which had already been awarded to Miami Beach between Biscayne and Flagler “ ‘so as to enable the Board to determine for the future which track is able to produce greater revenue and otherwise benefit the public and state under comparable circumstances.’ ” The court held that it is the duty of the Board that where requests for dates are not in conflict it is appropriate to allocate the dates of the Dade County tracks as nearly as possible to their requests as circumstances permit. On these facts, the petition of Miami Beach to compel the Board to rescind its order was granted. The court then proceeded to make an allocation of dates in accordance with the principles enunciated in the opinion and awarded Miami Beach the original dates allowed by the Division of Pari-Mutuel Wagering. The opinion contains an instruction to the Board that due consideration must be given to all applicable factors to the end that equitable, continuous dates may be determined and awarded each year.
The Board states the following facts as its basis for failing to award Miami Beach the fall dates, which Miami Beach had made its first choice, and which Biscayne had made its second choice:
******
“(3) Miami Beach Kennel Club is not comparable to Biscayne and West Flag-ler in that Miami Beach has a substantially reduced patron and seating capacity and also parking facilities and, therefore, would be incapable of accommodating patronage normally available during the fall and summer seasons, thereby substantially lessening the revenue of the State.
“In addition, Miami Beach has not been able to produce near the pari-mu-tuel handle and the resulting revenue to the State as the other applicants. To award Miami Beach either of the two desirable seasons would jeopardize production of state revenue without countervailing factors warranting consideration otherwise. Still further, the Board recognizes that the winter season is traditionally the height of the tourist season for Miami Beach, and it is advantageous to provide pari-mutuel facilities as near to the tourists as possible.”
Miami Beach does not attempt to refute the grounds assigned by the Board; therefore the question is simply whether these grounds are legally sufficient. We hold that the Board was not ministerially obligated to award Miami Beach the specific dates requested by it for the 1972-1973 racing season. The Board had, and appropriately exercised, its discretion and judgment, based upon all of the evidence adduced by the applicants, to fix and allocate greyhound racing dates for the next ensuing racing season in the manner in which it did, based upon those factors to be considered by it in exercising this clearly discretionary function. The Supreme Court has stated in the case of Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, Inc., Fla.1971, 245 So.2d 625, that unquestionably State revenue is one of the prime factors to be considered in granting permission for pari-mutuel wagering in the State of Florida. Furthermore, in a concurring opinion of Justice Adkins in the case of Gulfstream Park Racing Association, Inc. v. Division of Pari-Mutuel Wagering, Fla.1971, 253 So.2d 429, it is stated that the State has a pecuniary interest in racing “because of the revenue from the pari-mutuel betting, for racing was authorized solely because of the certain pro *28 duction of revenue for the State.” Furthermore, the Board recognized the fact that the winter season is traditionally the height of the tourist season in Miami Beach, and it is advantageous to provide pari-mutuel facilities as near to the tourist as possible. Since Miami Beach Kennel Club is located on Miami Beach, it is located closest to the tourists and is therefore more capable of accommodating them.
In light of the overwhelming evidence that the best interests of the State require an assignment of the fall dates to a track other than Miami Beach, we hold that the Board did not abuse its discretion in failing to allocate those dates to Miami Beach.
We have considered the additional points presented in the several briefs submitted in these consolidated petitions, and hold that there is no adequate basis for this court to interfere with the administrative function of the Board of Business Regulation. Accordingly, the petitions sought herein are denied.
It is so ordered.

. Earlier petitions have been filed in the Supreme Court of Florida, and in the District Court of Appeal, First District. See West Flagler Associates, Ltd. v. Division of Pari-Mutuel Wagering, Fla.1971, 251 So.2d 856; and Biscayne Kennel Club, Inc. v. Board of Business Regulation, Fla.App.1970, 239 So.2d 53.