PER CURIAM.
By petition for writ of certiorari pursuant to Fla.Stat. § 120.31, F.S.A., we have for review an order of the Board of Business Regulation setting thoroughbred horse racing dates for the 1972-1973 winter racing season for Tropical Park, Inc., Gulf-stream Park Racing Association, Inc. and Hialeah Race Course, Inc. The order provides :
* * * * * *
“(a) Tropical is hereby awarded the dates of December 1, 1972 through January 16, 1973.
“(b) Gulfstream is hereby awarded the dates of January 17, 1973 through March 3, 1973.
“(c) Hialeah is hereby awarded the dates of March 5, 1973 through April 19, 1973.”
The history of this case is as follows. In 1947, the Florida Legislature adopted a statute that allocated the middle dates to the track producing the most revenue for the preceding season. In February, 1971, in the case of Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, Inc., Fla.1971, 245 So.2d 625, the Florida Supreme Court held the 1947 legislative act unconstitutional and stated as follows:
******
“The basic effect of our decision is to restore to the State Racing Commission and other appropriate authorities the discretionary power to assign the racing dates among the horse tracks located in Dade and Broward Counties in the next and succeeding racing years in the manner provided by law, unaffected by voided Section 550.081, Florida Statutes, F.S. A.”
******
Thereafter the Board allocated to Hialeah the middle dates for the 1971-1972 racing season. Subsequently, in the case of Gulfstream Park Racing Association, Inc. v. Division of Pari-Mutuel Wagering, Fla. 1971, 253 So.2d 429, the Florida Supreme Court quashed the order of the Board and by its judgment granted the middle dates to Gulfstream. The court held:
******
“Under the special circumstances of this particular controversy Gulfstream vis-a-vis Hialeah, the factor of affording ‘equality of opportunity’ to Gulfstream and some degree of rectification for the long years of discrimination is a most important factor preponderating over nearly all other considerations ordinarily material in fixing racing dates between competitors.”
*841 * * * * * *
“Whether Hialeah’s business practices, i. e., split ownership with a northern horse track and its participation in the ‘national circuit’ have any material effect in lessening- overall attendance at Florida horse tracks is not clearly ascertainable from this record. However, more competition and less monopoly favoring one track may prove helpful to the racing industry in Florida.
“For the reasons stated above, we find there has been an abuse of discretion by the state racing authority in fixing the said racing dates and we quash its order fixing the racing dates for Gulfstream and Hialeah in the approaching winter horse racing season during 1972.”
>}c jjc * * * ❖
Gulfstream raced the middle dates for the 1971-1972 season. In accordance with the applicable law, applications by the three thoroughbred racing tracks for racing dates were made to the Board for the 1972-1973 racing season. Tropical applied for and was granted the first dates from December 1, 1972 through January 16, 1973. Hialeah and Gulfstream applied for the middle dates of January 17, 1973 through March 3, 1973. The Board allocated the middle dates to Gulfstream and allocated to Hialeah the third forty day meet dates of March 5, 1973 through April 19, 1973. Hialeah filed exceptions to the Board’s order. The Board, at its meeting on June 6, 1972, adhered to the allocation of dates previously made. This petition followed.
Hialeah as petitioner, has argued five points upon which it urges that this court should quash that portion of the order allocating the middle dates to Gulfstream and by our judgment grant to Hialeah the middle dates. The petitioner suggests that there were procedural faults in the conduct of the hearings by the Board, but it is frankly stated in argument that the relief that it seeks here is a judgment awarding petitioner the middle racing dates. This relief is sought upon the basis of our reappraisal of the facts and circumstances which were before the Board.
The petitioner and the respondents agree that the racing dates should be fixed in a fair and impartial manner. The parties are agreed that the State is pecuniarily interested in racing because of the revenue from the pari-mutuel betting and that the interest of the State should be of paramount concern. The criteria which must be met are (a) the interest of the track owner; (b) the good-will; (c) the quality of the horses or dogs; (d) the track facilities; (e) geography; and (f) skill in management. Thus, there is no conflict upon the principles to be applied. The question is whether this record demonstrates that the result reached by the Board is contrary to these factors so that this court should quash the decision of the Board and grant the middle dates to Hialeah.
The first point argued by Hialeah is that the Board of Business Regulation failed to follow the directions given by the Supreme Court of Florida in Gulfstream Park Racing Association, Inc. v. Division of Pari-Mutuel Wagering, Fla.1971, 253 So.2d 429. The essential argument presented under this point is that the Supreme Court specifically limited the “test” to the 1971-1972 season. It is thereupon contended that the Board erroneously concluded that it had the power to extend the test period for an additional year.
We conclude that the Supreme Court of Florida has determined that the discretion vested in the Board of Business Regulation shall not be lightly regarded. In the recent opinion of the Supreme Court in West Flagler Associates, Ltd. v. Board of Business Regulation, Fla.1972, 265 So.2d 507, the court said:
******
“It is to be devoutly wished, however, that this Court will in the future be spared of further duty to settle judicially administrative decisions concerning the highly controversial racing dates of South Florida racing tracks. Perhaps *842 the performance tests heretofore prescribed by this Court for dog tracks will suffice.”
‡ ifc ‡ ‡ *
We conclude that the Supreme Court did not intend, by the use of the phrase “to apply to the 1971-1972 winter horse racing season only”, to deprive the Board of Business Regulation of its discretion for the 1972-1973 racing season.
The second point presented in petitioner’s brief urges that the Board improperly considered, over the objection of the petitioner, incomplete advertising and promotional expenses expended by the two tracks in the promotion of the 1971-1972 racing season. It is suggested that this consideration of improper evidence deprived petitioner of the equal protection and due process of the law. Petitioner points out that its 1971-1972 racing season ended on April 29th and on May 2nd the Board of Business Regulation contacted petitioner and requested that the Board be provided with the advertising and promotional expenses expended by Hialeah for the 1971— 1972 racing season. Petitioner’s response to the request, together with the response of Gulfstream to the same request, was considered by the Board in Miami on May 5, 1972. At that time, petitioner urged that such costs not be considered and gave as its reason the fact that its own figures were incomplete. The consideration of these figures by the Board was made a ground for exception to the Board’s initial order of May 18, 1972. Attached to the exceptions which were served on the 29th of May were three affidavits setting forth additional information as to monies expended in promotional and advertising expenses. There is no suggestion in the exceptions that additional time was required to complete these figures beyond the amounts set forth in the affidavits. The affidavits mentioned were admitted into evidence by the Board at its June 6th meeting and on June ISth an amended order was issued. It is the amended order to which this petition for certiorari should be addressed. This order recites that the Board reviewed its order of May 18th and heard argument on the exceptions to the order filed by Hialeah Race Track.[1] We therefore conclude that even if Hialeah did not have its complete figure as to the expenses for promotional activities at the hearing before the Board on May 18th, the Board was fully advised prior to its final decision. The conclusion of the Board, that Gulfstream had made great effort to promote the overall racing season, is not invalidated by the procedure employed.
The third point argued urges that we should change the dates set by the Board because these dates do not fit into the thoroughbred racing structure of the United States in its relationship to the State of Florida. Essentially it is urged that because Hialeah for many years had the choicest dates, Hialeah thereby inserted itself into the national routine of thoroughbred racing so that the best interests of the State require that it continue racing in the middle dates. This cannot be a valid argument for the change of the dates set by the Board because if it were a valid argument, then the opinion of the Supreme Court of Florida granting to Gulfstream the middle racing dates in the 1971-1972 season would be wrong. The same conditions as to the thoroughbred racing structure which now exist prevailed at the time of the court’s decision in 1971. Indeed, a reading of the opinions in the 1971 case (Gulfstream Park Racing Association, Inc. v. Division of Pari-Mutuel *843 Wagering, Fla.1971, 253 So.2d 429), requires the conclusion that the same argument now presented in appellant’s third point was presented to the Supreme Court of Florida in 1971. Since it was rejected by that court at that time, it is not a sufficient basis upon which we should now change the dates set by the Board.
The fourth point presented by petitioner urges that the Board failed to follow the essential requirements of law because it failed to consult with the advisory committee provided by Fla.Stat. § 20.16(3), F.S. A. An examination of this section fails to convince us that the Board of Business Regulation is mandatorily required to seek a consultation with the advisory committee prior to setting the race track racing dates. An interpretation of the section which would require such consultation would be in contravention to the direction to the Board contained in Fla.Stat. § 20.16(5), F.S.A., that the Board shall allocate the thoroughbred horse racing dates and “shall not delegate said function to any subordinate officer or division of said board.”
The last point argued by petitioner urges that contrary to the contention of Gulfstream, the two race tracks are not comparable!' ■ It urges that the ability of Hialeah to attract clientele which produces revenue for the State of Florida is greater. These statements are argued on the basis of tradition, the flight of the flamingos, the maintaining of the grounds by Hialeah year after year in order that they might attract the best clientele, and upon petitioner’s interpretation of the results of the 1971-1972 season when compared to the financial return to the State in prior years. The record of the hearing before the Board shows that it made an earnest attempt to determine whether Gulfstream or Hialeah was most likely to produce the greater amount of revenue for the State during the 1972-1973 middle racing period. The record of the amounts of revenue produced by the tracks during the 1971— 1972 racing periods and during prior years was fully investigated. The antagonists analyzed, interpreted, and argued the effect of many factors. Whether the ultimate decision was correct will still be subject to argument in years to come. The petitioner has not, in our opinion, carried its burden of demonstrating clearly that it could produce the greater amount of revenue for the State.
We have considered all of the arguments made by Hialeah first before the Board and now before us. We find that none of these arguments impel the conclusion that Hialeah will produce more revenue for the State of Florida. A review of the evidence before the Board does not convince us that the Board has abused the discretion granted it by law. We therefore respectfully decline to set the dates for thoroughbred racing between the two tracks concerned.
The petition for certiorari is denied.

. The recitation of the Board in its amended order as to the expenditure of promotional funds is as follows :
*****
“That the testimony before the Board was that Gulfstream spent considerably more in advertising than they had in prior years in order to promote their racing season, and made additional efforts and expenditures to have a healthy racing season with limited start-up time notice.”
si« Hs # ❖ s*: