PER CURIAM.
By various consolidated petitions for certiorari, mandamus and prohibition, we have for our consideration the validity of the decision and order of the Board of Business Regulation dated June 21, 1971, awarding greyhound dog racing dates to Dade County tracks for the 1971-72 racing season.
Our jurisdiction under Fla.Const, art. V, § 4(2), F.S.A., is admittedly concurrent with that of the District Courts of Appeal under § 5(3). Normally we would transfer the cause to the appropriate district court, upon motion of a party or sua sponte. However, the present situation is anything but normal. Because the time element is so critical to these litigants, to the public and to the State of Florida for revenue, and because our jurisdiction here is discretionary, we accept jurisdiction in the public interest and for a speedy termination to this litigation. Rather than viewing this indulgence and concern of the Court as a precedent for emergency relief from this Court, however, the pari-mutuel industry should take note that emergencies of this sort will hereafter be viewed pre *858 sumptively as having been caused by the dereliction of the parties in failing to pursue diligently the administrative procedures, or of the Board in not expeditiously completing its disposition of the matters before it, as the case may appear. This continuing “panic review” by the courts, within the inadequate time allowed for deliberation of such weighty matters, must cease.
West Flagler Associates, Ltd. (hereinafter Flagler), Biscayne Kennel Club, Inc. (hereinafter Biscayne), and Miami Beach Kennel Club, Inc. (hereinafter Miami Beach), filed applications for racing dates for the 1971-1972 greyhound racing season as follows:
Requested Dates
Miami Beach (an alternative date) 9-3-71 thru 1-3-72
Flagler 5-1-72 thru 9-4-72
Biscayne (as amended) 5-5-72 thru 9-2-72
On May 14, 1971, a hearing was held before the Division of Pari-Mutuel Wagering (now abolished and its duties assumed by the Board of Business Regulation[1]) to determine what racing dates would be allocated to which tracks. The Division entered its order awarding the following dates:
"Division" Allocations
Miami Beach (as requested) 9-3-71 thru 1-3-72
Flagler 1-4-72 thru 5-4-72
Biscayne 5-5-72 thru 9-4-72
On May 24, 1971, Miami Beach received its license to begin operations as of September 3, 1971, paid its bond in the amount of $50,000 and began preparations for opening on September 3, 1971.
Flagler sought Supreme Court review of the Division’s order of May 14, 1971, but when the 1971 Legislature abolished the Division of Pari-Mutuel Wagering, this Court entered an order temporarily relinquishing jurisdiction to the Board of Business Regulation to review the order of the former Division.
Pursuant to this Court's said order of June 8, 1971, the Board of Business Regulation has reviewed the action of the former Division of Pari-Mutuel Wagering and by its order of June 21, 1971, has reached different conclusions and findings and has made new and different split date assignments of various racing dates to the Dade County greyhound tracks as follows:
Board Split-Date Awards
(Total "101 racing days, plus 4 charity days" each.)
Biscayne 9-3-7X thru 11-2-71; AND 5-5-72 thru 7-5-72
West Flagler 11-3-71 thru 1-3-72; AND 7-6-72 thru 9^1-72
Miami Beach 1-4-72 thru 5-4-72
This Court, having considered the briefs and record submitted herein and the oral arguments of the parties, is of the opinion that this order under review is correct in part and erroneous in part.
The Board of Business Regulation found that “The evidence presented failed to clearly establish whether Biscayne or Flagler is better able to meet the criteria set out in [State ex rel.] West Flagler Kennel Club v. Florida State Racing Commission, 74 So.2d 691 (Fla.1954), and West Flagler Associates, Ltd. v. Board of Business Regulation, 241 So.2d 369 (Fla.1970).” Therefore, the Board determined a realignment of dates which would take away from Miami Beach the “Fall” dates which had been granted to it and for which its license had already issued and had been acted upon by Miami Beach in the posting of bond and investment of monies and commitments in preparation for the opening of the first of the “new season” dates.
The Board then changed Miami Beach to the winter season (least remunerative) and split the fall season, which had already been awarded to Miami Beach, between Biscayne and Flagler (“comparable tracks”) and divided the summer dates between those two tracks, “so as to enable the Board to determine for the future which track is able to produce greater *859 revenue and otherwise benefit the public and state under comparable circumstances.”
That portion of the Board’s order which belatedly deprived Miami Beach of its license to operate during the fall season is, under the particular facts and other related circumstances, contrary to the principles of law contained in West Flagler Associates v. Board of Business Regulation, 241 So.2d 369 (Fla.1970). There we said (p. 376):
“[T]he right to profitably enjoy the benefits of a license after it is already granted without undue prejudice to the licensee, or undue discrimination in favor of other licensees similarly situated, is likewise implied, if not expressed, in the statutes. State ex rel. West Flagler Amusement Co. v. Rose, et al., 122 Fla. 227, 165 So. 60 (1935).”
Moreover, it was there further pointed out that where not in conflict, it is appropriate “to allocate the dates of the Dade County tracks as nearly in accord with their original request as the circumstances may permit” (at p. 379).
Miami Beach was only a nominal party to this litigation until the revoking action of the Board by its order of June 21, 1971. The two other Dade tracks were engaged in a contest over their dates when Miami Beach found itself drawn into the fray by the Board’s said order determining to redivide all dates. This involved those already awarded without any real contest to Miami Beach. To call back those dates at this late stage would be to improperly deny such license under the particular facts and surrounding circumstances.
The petition of Miami Beach for writ of mandamus to compel the Board to rescind the order adversely affecting its said license is therefore hereby granted; a judgment in mandamus thereon is hereby entered and the award of racing dates to Miami Beach for the 1971-1972 season heretofore fixed by the former Division of Pari-Mutuel Wagering in its order of- May 14, 1971, are hereby restored to Miami Beach for September 3, 1971, through January 3, 1972.
As to the Board’s order regarding Flagler and Biscayne, the objective announced there seems to be a reasonable one, to obtain a comparison performance on alternate summer dates between the two relatively “comparable tracks,” as it found Biscayne and Flagler to be. This is in the exercise of a reasonable discretion on the part of the Board which we must uphold. It is in the instances of an abuse of discretion in making an unreasonable or unsupported award, or one contrary to those factors established in the determination of the fixing of dates, or an erroneous application of the law, or a departure from the essential requirements of the law, that a court is justified in disturbing administrative orders.
A comparison of performances as thus ordered between these two tracks, however, would be most fairly and best afforded by the awarding of straight summer seasons rather than so-called “split dates” applied by the Board.[2]
It would further be expected as a reasonable extension of this plan of comparative results for the future, that upon the Board being then fortified with this information, it would, beginning with September 1973, equitably determine and award continuous dates to all Dade tracks. Due consideration must be given to all applicable factors, to the end that equitable continuous dates for each track may be determined and awarded by the Board each year.
Matinee dates are not reached by the former Division or the Board’s orders,[3] *860 nor is it revealed in this regard what the respective requests for matinees are. These may involve factual issues requiring testimony in which case the Rule prevents its consideration under extraordinary writs.[4] Matinees should be awarded as requested where not inconsistent with the policy of the Board of Business Regulation.
So far as the evidence before the Board and the record here are concerned, there does not appear to be any substantial change from the situation as it was at the time these matters were before this Court only last year when we considered the matter at length in West Flagler Associates, supra, and there settled upon equitable dates based upon that evidence. The same dates (varied only for the 1972 calendar day differences) are now here approved for the 1971-1972 season as follows:
Approved Awards
Track Dates
Miami Beach 9-3-71 thru 1-3-72
Biscayne 1-4-72 thru 5-4-72
Flagler 5-5-72 thru 9-4-72
Accordingly, the petitions sought herein are granted to the extent outlined in this opinion and to implement the racing dates last above set forth.
It is further ordered because of the early impending start of the new racing season affected hereby and in the public interest and in the further interest of the state’s revenue which is involved, that the times for filing any petitions for rehearing are • shortened to Friday, July 9, 1971.
It is so ordered.
ERVIN, CARLTON, ADKINS, BOYD and McCAIN, JJ., concur.
DEKLE, J., concurs in part and dissents in part with opinion.
ROBERTS, C. J., concurs in part and dissents in part and concurs with DEKLE, J-

. Fla.Laws 1971, eh. 71-98.

. Biscayne Kennel Club, Inc. v. Board of Business Regulation, 239 So.2d 63 (1st DCA Fla.1970), dissenting opinion, approved in West Flagler Associates, Ltd. v. Board of Business Regulation, 241 So.2d 369 (Fla.1970).

. Order of the former Division of May 21, 1971, provides, inter alia: “The Chairman *860 stated prior to the granting of these dates that the matinees would be awarded at the Commission’s next meeting. Therefore, it would be appreciated if you [The order is addressed to the 3 tracks here.] would advise by return mail the number, dates and days-of-the-week on which you wish to conduct matinee and charity/scholarship performances, to insure your request appearing properly on the agenda.”

. Florida Appellate Rule 4.5a (2), 32 F.S.A.