253 So.2d 429 (1971)
GULFSTREAM PARK RACING ASSOCIATION, INC., a Florida Corporation, Petitioner,
v.
DIVISION OF PARI-MUTUEL WAGERING et al., Respondents.
No. 41515.
Supreme Court of Florida.
October 15, 1971.
*430 Landefeld & Romanik, Hollywood, and Howard M. Neu, North Miami, for petitioner.
Robert L. Hesse, Sarasota, and J. Riley Davis, Tallahassee, for Division of Pari-Mutuel Wagering and Dept. of Business Regulation of the State of Florida.
Worley & Gautier, Miami, for Tropical Park, Inc.
L. Grant Peeples and L. Ralph Smith, Jr., of Peeples, Smith & Moore, Tallahassee, for Hialeah Race Course, Inc.
ERVIN, Justice.
We review a writ of certiorari and return involving an attack of Petitioner Gulfstream Park Racing Association, Inc., a Florida corporation, on the administrative decision and order of the Respondent Board of Business Regulation, Department of Business Regulation, dated August 3, 1971, affirming the decision and order of the Division of Pari-mutuel Wagering of the Department of Business Regulation (formerly the State Racing Commission) of May 14, 1971, granting to Respondent Hialeah Race Course, Inc., a Florida corporation, the horse racing dates and days as follow: January 17, 1972 through March 2, 1972, exclusive of Sundays, usually referred to as the "middle dates" in the Florida winter horse-racing season. Petitioner Gulfstream is aggrieved because such middle racing dates and days were not granted to it; instead, said order allotted to Gulfstream the racing dates and days as follow: March 3, 1972 through April 21, 1972, exclusive of Sundays and including three charity/scholarship days.
The cause is at issue; has been briefed and orally argued and counsel for the two race tracks, Hialeah and Gulfstream, in the oral argument, have requested this Court to expedite its decision in this matter so that preparations may go forward without delay for the conduct of the horse race meets by the two tracks in 1972 on the racing dates finally allocated to them.
Gulfstream maintains that the award of the "middle dates" to Hialeah is an arbitrary abuse of discretion by the Department of Business Regulation. Its primary contention is that the Department of Business Regulation abused its discretion in not correcting the evils of monopoly and inequality of opportunity which this Court found to exist in its decision in Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, Inc., 245 So.2d 625.
In that case we upheld a decision of the Circuit Court declaring F.S. section 550.081, F.S.A., unconstitutional because it was found by the trial court that Gulfstream proved its allegations that it
"* * * has a physical plant, facilities, racing program and quality of racing which is or could be competitive with Hialeah and on comparable racing dates Gulfstream could attract at least an equal number of spectators and could handle and produce at least an equal amount of pari-mutuel wagering and at least an equal amount of tax revenue to the State of Florida if it were given the opportunity to run its racing program during the so-called `middle dates;' * * *" (Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, supra, at 627-628.)
*431 We also said in that case:
"Unquestionably, state revenue is one of the prime factors for permission of pari-mutuel wagering in this state, however, the fallacy of this argument here is that the `equality of opportunity' is more apparent than real. There is nothing in the record to indicate that any track except Hialeah `may reasonably be expected' to exceed the revenue produced by Hialeah, so long as Hialeah has the advantage of the prime racing dates [under F.S. § 550.081, F.S.A.]. The trial judge found that the statute has the effect of granting and perpetuating to Hialeah `an unconscionable advantage' in the selection of racing dates and of denying to other persons `similarly circumstanced the right to participate in the business of horse racing on any basis equal to or in excess of the privilege granted to Hialeah.' We agree. We can only conclude, as did the trial court, that the statute in question has the effect of denying to Gulfstream equal protection and due process of law. * * *" (Supra, at 629.)
F.S. section 550.081, F.S.A. was enacted in 1947 and pursuant thereto for more than twenty years last past the Hialeah Track has had the "unconscionable advantage" of the middle dates. It would appear to follow logically that upon its first opportunity after this Court invalidated Section 550.081 for the reasons assigned in its opinion based upon the evidentiary findings of the trial judge that Gulfstream has comparable facilities and ability to produce racing events of similar quality and revenue equalling that which Hialeah had been producing if Gulfstream were given the middle dates, the Respondent Department of Business Regulation would have afforded Gulfstream such equal opportunity unless the most compelling reasons otherwise dictated. That is to say, at least for the 1971-72 racing year, the first year after the invalidation of Section 550.081, exercise of sound discretion by the state racing authority would appear to warrant Gulfstream being given the middle dates as a competitive test during the upcoming racing season and perhaps as a prelude to a rotation system of racing dates annually between Gulfstream and Hialeah unless strong and compelling reasons otherwise dictate.
We have searched in vain in the record of hearings in this matter before the administrative boards of the Department of Business Regulation for strong and compelling reasons in the form of competent and substantial evidence why Gulfstream should continue to smart at least for a test period under the "unconscionable advantage" so long accorded Hialeah by the invalidated statute.
Under the special circumstances of this particular controversy Gulfstream vis-a-vis Hialeah, the factor of affording "equality of opportunity" to Gulfstream and some degree of rectification for the long years of discrimination is a most important factor preponderating over nearly all other considerations[1] ordinarily material in fixing racing dates between competitors.
In our decision invalidating Section 550.081, we indicated the law favored competition between the two tracks and there could be little or none so long as the monopoly decreed by Section 550.081 lasted with no equal opportunity extended Gulfstream to compete and show its ability to successfully produce in those facets deemed to represent a successful race meet during the state's prime winter horse racing days.
None of the special factors reflected in our decision invalidating Section 550.081 appear to have made any appreciable impact upon the Department of Business Regulation in the exercise of its administrative discretion allocating the middle dates as between Hialeah and Gulfstream, resulting, *432 we believe, in a patent abuse of administrative discretion.
We here outline the primary considerations the Department of Business Regulation appears to rely upon to justify its administrative continuation of the "unconscionable advantage" so long accorded Hialeah by virtue of Section 550.081, together with our findings thereon.
Hialeah offered testimony of an economist, Dr. Davis H. Spaeth, who stated that from the factors he selected and computerized as bases for comparison between Gulstream and Hialeah in respect to their separate abilities and potential to generate successful race meets there are some unidentifiable intangibles which indicate statistically that Hialeah has better capability for conducting successful race meets than Gulfstream.
We do not find the economist's conclusions clear and convincing. They are quite nebulous and speculative and fail to countervail the record of performance of Gulfstream during its lesser advantageous racing dates throughout past racing seasons and its potential as reflected in the record for even greater performance than Hialeah if given the middle dates due to its physical plant and its demonstrated aggressive ability to modernize its racing procedures for the attraction of patrons.
The Racing Commission (now the Division of Pari-Mutuel Wagering) mailed questionnaires to 2,538 owners and trainers who race horses in south Florida during the winter season, seeking to get their opinions on the question whether Gulstream should be given the middle dates rather than Hialeah. The responses were numerically disappointing; only 26 per cent of those mailed questionnaires responded. Approximately 17 per cent indicated they would not race in Florida if Hialeah did not have the middle dates. Slightly more than 37 per cent of the small percentage of breeders and trainers responding were of the opinion that state revenue would be put in jeopardy by not awarding Hialeah the middle dates. We find some of the questions posed in the questionnaires to be couched in general terms and far from scientifically impartial and seemingly calculated to elicit responses more favorable to Hialeah than Gulfstream, leading to the impression on our part that much fairer and more appropriate disinterested questions could have been submitted. But, nonetheless, we do find the opinion results gleaned from the answers to the questionnaires to be strong and compelling reasons for denying Gulfstream a first chance at an equal opportunity to compete with Hialeah and determine by an actual racing performance test during the middle dates what the result of the change would be.
Gulfstream contends that Hialeah's loyalty to the overall enhancement of Florida's racing industry, and incidentally to the augmentation of the state's revenue racing take, is divided because of that track's split ownership due to a large stock participation of Garden State Racing Association of New Jersey in the ownership of Hialeah's corporate stock; that Garden State's race meet in New Jersey is scheduled before the winter thoroughbred horse racing season ends in Florida and that Hialeah does little, if anything, to further the objectives of F.S. section 550.261, F.S.A., in retaining well-bred, top quality racing horses in Florida throughout the Florida winter horse racing season; that because Hialeah's ownership is linked with Garden State Racing Association, Hialeah does little or nothing to induce owners of the better thoroughbred horses to keep their horses in Florida throughout the racing season. Gulfstream maintains the better horses (which, it says, attracts more sophisticated bettors and larger amount wagers) are shipped from Florida after racing at Hialeah to Garden State in New Jersey and Aqueduct in New York for race meets there which meets conflict with Florida racing during the latter stages of Florida's winter season. Gulfstream also asserts that Hialeah's contention that most of the top quality horses racing at its meet are "national *433 horses," and a part of a "national circuit" system of forwarding top quality horses to particular tracks, including Hialeah, Garden State and Aqueduct, is a sham of Hialeah's to justify its "unconscionable advantage" in perpetually being the recipient of the middle dates and that the state racing authorities were unduly influenced by these extraneous claims of Hialeah with reference to its ability to perform because it is a part of the "national circuit." In this connection Gulfstream claims that if given the middle dates it reasonably believes it can explode the theory that it is a "second-class" track not favored by the "national circuit."
Whether these contentions of Gulfstream have particular merit or not, we are unable to say. However, they do raise certain inferences that a "change" of scheduling of racing dates between Gulfstream and Hialeah may prove that competition is advantageous to the state, especially in view of the official records of the Division of Pari-Mutuel Wagering which reflect that horse racing has not kept pace with the pari-mutuel industry in Florida. The attendance at Tropical Park decreased 27 per cent; at Hialeah, 15.3 per cent, and at Gulfstream, 15.4 per cent when last year's attendance at these tracks are compared with attendance figures at these tracks in the year 1956, for example. Whether Hialeah's business practices, i.e., split ownership with a northern horse track and its participation in the "national circuit" have any material effect in lessening overall attendance at Florida horse tracks is not clearly ascertainable from this record. However, more competition and less monopoly favoring one track may prove helpful to the racing industry in Florida.
For the reasons stated above, we find there has been an abuse of discretion by the state racing authority in fixing the said racing dates and we quash its order fixing the racing dates for Gulfstream and Hialeah in the approaching winter horse racing season during 1972.
Because of the short period remaining for adequate preparation of the horse racing meets at Gulfstream and Hialeah involving numerous details of contracting with owners of horses, arranging for days for particular races, recruiting and employing personnel, printing programs, etc., we direct the Department of Business Regulation to accord Gulfstream the middle dates and Hialeah the dates it accorded Gulfstream, the same to apply to the 1971-1972 winter horse racing season only. Our action here is in accord with recent dispositions in the allocation of racing dates for dog tracks due to shortness of time periods[2]; it is also in accord with the request of counsel for the two tracks as hereinbefore indicated for expeditious disposition of this litigation and a final result therein.
It is so ordered.
McCAIN and DEKLE, JJ., concur.
ROBERTS, C.J., concurs specially with opinion.
ADKINS, J., concurs specially with opinion.
CARLTON, J., concurs specially with ADKINS, J.
BOYD, J., dissents in part and concurs in part.
ROBERTS, Chief Justice (concurring specially):
Where there has been a systematic pattern over a period of more than twenty-five years of obvious discrimination in favor of one horse track against another with equal facilities in the award of racing dates, there results an abuse of discretion which requires *434 judicial review. However, it must be noted that the present Board of Business Regulation is responsible for only one year of such discrimination. I agree that the order under review which perpetuates such a result must be quashed. In my opinion, it would be better to remand the cause to the Board for new date allocations, based on the guidelines herein provided. However, it is apparent, and counsel at the bar of the Court have conceded, that time will not permit such and this Court must enter the decision that should have been entered by the Board below. I must, therefore, concur in the majority opinion of Mr. Justice ERVIN.
ADKINS, Justice (concurring specially):
With the slight explanation hereinafter discussed, I concur in the opinion of Justice ERVIN. I concur in the result without reservation. The factor of affording "equality of opportunity" to various race tracks and the factor of favoring competition between the tracks are not the most important matters to be considered in setting dates for racing.
The State is pecuniarily interested in racing because of the revenue from the pari-mutuel betting, for racing was authorized solely because of the certain production of revenue for the State. Therefore, the interest of the State should be of paramount concern. See Hialeah Race Course, Inc. v. Gulfstream Park Racing Ass'n, Inc., 37 So.2d 692 (Fla. 1948); West Flagler Associates, Ltd. v. Board of Business Regulation, 241 So.2d 369 (Fla. 1970).
Other factors to be considered in fixing racing dates are: (a) The interest of the track owner; (b) the good-will; (c) the quality of the horses or dogs; (d) the track facilities; (e) geography; and (f) skill in management. After these criteria have been met, the racing date should be fixed in a fair and impartial manner. See State ex rel. West Flagler Kennel Club, Inc. v. Florida State Racing Commission, 74 So.2d 691 (Fla. 1954).
In the controversies between Biscayne Kennel Club and West Flagler Associates, Ltd. (West Flagler Associates, Ltd. v. Board of Business Regulation, supra; West Flagler Associates, Ltd. v. Division of Pari-Mutuel Wagering, 251 So.2d 856 (Fla. 1971) (opinion filed July 1, 1971)), it appeared from the record that Biscayne Kennel Club, Inc. had been given an opportunity to race during the favored dates, but had failed to produce as much revenue as its competitor had under similar circumstances. Furthermore, we found the splitting of dog track dates on a 52-52 days' basis resulted in added expense to the tracks and less revenue to the State. Gulfstream has not had this opportunity. For that reason I am willing to concur in the opinion and the result so long as it is limited to the ensuing racing season.
CARLTON, J., concurs.
BOYD, Justice (dissenting in part, concurring in part):
I agree with the majority view that perpetual assignment of the middle season dates to one track while denying same to another track of about equal size and ability to entertain the public and produce tax revenue would be an abuse of discretion. The record indicates that the Gulfstream track has made extensive improvements and may well be able to compete as an equal with the Hialeah track. However, I must dissent from the majority view that the award to Hialeah of the preferred dates for the 1971-72 season, in and of itself, constitutes an abuse of discretion.
The Board of Business Regulation is aware of the criteria necessary to determine which track is equipped to provide the best entertainment and source of tax revenue. In fairness to the competing tracks the Board must carefully study the various criteria and compare the tracks. Counsel for the State at the time of oral argument informed this Court that various proposals are being studied, including the possible setting of dates for more than *435 one season at a time, overlapping dates, splitting of seasons and switching of racing dates annually. There is no showing in the record before us of unfairness or abuse of discretion in awarding the dates for this season.
In the case of Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, Inc., 245 So.2d 625 (Fla. 1971), this Court noted the Racing Commission was required by Florida Statutes § 550.081, F.S.A. to permit the track raising the most taxes in any season to have its choice of dates for the next racing season. The effect of § 550.081 was to take away from the state racing authorities all discretion in fixing dates. This department of the executive branch of government was simply denied the right to exercise discretion until Florida Statutes § 550.081, F.S.A. was held unconstitutional by this Court in the recent Gulfstream opinion, supra.
The majority opinion holds that the racing authorities should have recognized that the recent Gulfstream decision, supra, striking § 550.081, was a mandate from this Court to assign the best dates to Gulfstream track, since Gulfstream had not been successful in getting the choice dates while § 550.081 remained in effect. I disagree. There is nothing in that opinion requiring this to be done. What the opinion does do is to free the state racing authorities from the statutory restrictions and allow, for the first time since 1947, the exercise of discretion in setting racing dates. If in seasons to come a pattern of favoritism toward one race track should develop, an abuse of discretion could be shown.
To preserve the separate and equal branches of the government, each branch must avoid encroachment into the other's sphere of activity. The courts serve as referees to prevent encroachment and must be constantly alert to assure that the courts themselves not violate this basic concept of constitutional law.
The setting of racing dates is the duty of the racing authorities under the Board of Business Regulation. Courts should interfere only when there is a clear abuse of discretion or when the opening dates of the racing season are so near to the time of hearing there is not sufficient time for the normal procedures and waiting periods required by law. West Flagler Asso. v. Board of Business Regulation, 241 So.2d 369 (Fla. 1970). No such urgency exists here.
The granting of the middle dates to Hialeah track for the 1971-72 season alone does not constitute sufficient abuse of discretion to justify the action of this Court in switching assigned dates of the two tracks. A better course than switching dates would be a finding setting out clearly what would or would not be abuses of discretion and referring it back to the Board for reconsideration.
To the extent that this Court has undertaken to modify the action of the Board in setting the 1971-72 racing dates, I must dissent.
NOTES
[1] State ex rel. West Flagler Kennel Club, Inc. v. Florida State Racing Commission, (Fla.) 74 So.2d 691.
[2] West Flagler Associates, Ltd. v. Board of Business Regulation (Fla.) 241 So.2d 369; West Flagler Associates, Ltd. v. Division of Pari-Mutuel Wagering (Fla.) 251 So.2d 856, and West Flagler Associates, Ltd. v. Board of Business Regulation, (Fla.) 251 So.2d 855.