270 So.2d 366 (1972)
HIALEAH RACE COURSE, INC., a Florida Corporation, Petitioner,
v.
BOARD OF BUSINESS REGULATION OF the DEPARTMENT OF BUSINESS REGULATION et al., Respondents.
No. 42949.
Supreme Court of Florida.
November 10, 1972.
*367 Marion E. Sibley, of Sibley, Giblin, Levenson & Ward, Miami Beach, O'Neill & Bishop, Ocala, L. Grant Peeples, and Taylor, Brion, Buker, Hames, Greene & Whitworth, Miami, for petitioner.
Herbert M. Klein, Miami, and J. Riley Davis, Tallahassee, for Department of Business Regulation.
Leonard Romanik, of Landefeld & Romanik, Hollywood, for Gulfstream Park Racing Ass'n, Inc.
ADKINS and DEKLE, Justices.
Petition for writ of certiorari brings this cause before us on a claim of direct conflict with this Court's decision on last year's horse racing dates in Gulfstream Park Racing Association, Inc. v. Division of Pari-Mutuel Wagering, at 253 So.2d 429 (Fla. 1971), and this Court's dog racing dates case of West Flagler Associates, Ltd. v. Board of Business Regulation, 265 So.2d 507 (Fla. 1972). See also West Flagler Associates, Ltd. v. Division of Pari-Mutuel Wagering, 251 So.2d 856 (Fla. 1971).
Under this Court's jurisdiction as granted in Fla. Const., art. V, § 4, F.S.A., and F.A.R. 4.5(c), 32 F.S.A., the petitioner seeks our review of the holding of the District Court of Appeal, Third District, at 267 So.2d 839 (Fla.App.3d, 1972) (opinion filed September 26, 1972).
We granted oral argument based upon Motion to Speed the Cause, on both jurisdiction and the merits in order to expedite the matter. The able briefs of all parties have been considered.
Petitioner Hialeah Race Course, Inc. (hereinafter "Hialeah"), Tropical Parks, Inc. ("Tropical") and Respondent Gulfstream Park Racing Association ("Gulfstream") filed applications with the Board of Business Regulation ("Board") for thoroughbred horse racing dates for the 1972-73 racing season. Hialeah and Gulfstream in their applications sought the same middle winter dates of January 17, 1973, through March 3, 1973. These middle winter dates are by far the most lucrative.
Pursuant to its authority in Chapter 71-98, Laws of Florida, the Board conducted a public hearing to determine the annual *368 allocation of thoroughbred racing dates for the 1972-73 winter season. After due deliberation the Board entered its initial order allocating the horse racing dates as follows:

 Tropical Dec. 1, 1972 thru Jan. 16, 1973
 Gulfstream Jan. 17, 1973 thru Mar. 3, 1973
 Hialeah Mar. 5, 1973 thru Apr. 19, 1973

Hialeah objected and filed exceptions to the Board's order. Following a hearing on the exceptions, the Board issued an amended order adhering to its allocation of racing dates and saying:
"(5) Gulfstream and Hialeah are comparable tracks in size and capacity, and the evidence presented failed to clearly establish whether Gulfstream or Hialeah is better able to meet the criteria set forth in West Flagler Kennel Club v. Florida State Racing Commission, 74 So.2d 691, and reaffirmed in West Flagler Associates, Ltd. v. Board of Business Regulation, 241 So.2d 369, and the two recent Gulfstream-Hialeah cases, 245 So.2d 625, and 253 So.2d 429.
"(6) That comparing the performance of Gulfstream with that of Hialeah for a period of only one year is not sufficient time to allow the Board to adequately determine the true ability of both tracks to produce state revenue.
"(7) That the factor of affording equality of opportunity to Gulfstream and some degree of rectification for the long years of discrimination is also an important factor in fixing racing dates between competitors, and under the circumstances herein set forth to award the middle dates to Hialeah after Gulfstream had been allocated such dates for a period of only one year, after Hialeah had had such middle dates for a period of in excess of 20 years, would be an arbitrary abuse of discretion by the Board and would not amount to a true competitive test to determine who would best meet the criteria set forth in the West Flagler case (74 So.2d 691) nor would it afford Gulfstream a substantially equal opportunity for the beneficial enjoyment of its permit."
From this adverse ruling, Hialeah filed a petition for writ of certiorari in the District Court of Appeal, Third District. In its opinion, the District Court set out the criteria for determining racing dates. The parties have agreed that the interest of the State is paramount. Upon review, the District Court said the Board did not abuse its discretion and accordingly denied certiorari.
Hialeah alleges direct conflict with Gulfstream Park Racing Association, Inc. v. Division of Pari-Mutuel Wagering, supra, wherein we said where the competing tracks are comparable:
"[A]t least for the 1971-72 racing year, the first year after the invalidation of Section 550.081, exercise of sound discretion by the state racing authority would appear to warrant Gulfstream being given the middle dates as a competitive test during the upcoming racing season and perhaps as a prelude to a rotation system of racing dates annually between Gulfstream and Hialeah unless strong and compelling reasons otherwise dictate." (253 So.2d, at 431)
In West Flagler Associates, Ltd. v. Board of Business Regulation, supra, we stated that a comparison performance on alternative summer dates is a reasonable method for determining racing dates but based it upon "a reasonable, equitable test," referring to our quashing of "split dates" as "not sufficiently comparable to provide a reasonable, equitable test." In the earlier West Flagler Associates, Ltd. v. Division of Pari-Mutuel Wagering, supra, we said the Board's objective in seeking comparable operating data of the tracks was a "reasonable one." There the Board declared that such objective was "to enable its Board to determine for the future which track is able to produce greater revenue *369 and otherwise benefit the public and State under comparable circumstances."
The formula prescribed by Fla. Stat. § 550.081(3), F.S.A., for the fixing of racing dates, in lieu of the discretionary power ordinarily reposed in the Board, was to divide the 120-day racing season into three 40-day periods and to allocate to the horse track producing the largest amount of tax revenue during the preceding year the right to operate during the racing period of its choice. The track producing the next highest tax revenue had the next choice, with the least desirable period going to the track having the least tax revenue.
In Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, Inc., 245 So.2d 625 (Fla. 1971), we held that the statute had the effect of granting and perpetuating to Hialeah an unconscionable advantage in the selection of racing dates and of denying to other persons similarly circumstanced the right to participate in the business of horse racing on any basis equal to or in excess of the privilege granted to Hialeah. We concluded that the statute had the effect of denying to Gulfstream equal protection and due process of law, and said:
"The basic effect of our decision is to restore to the State Racing Commission and other appropriate authorities the discretionary power to assign the racing dates among the horse tracks located in Dade and Broward Counties in the next and succeeding racing years in the manner provided by law, unaffected by voided Section 550.081, Florida Statutes, F.S.A." (pp. 629-630)
This decision did not vest the Board with an unbridled discretion in fixing the periods of operation for the various horse tracks. The operation of horse racing and legalized pari-mutuel and mutuel betting at horse race tracks in this State is a substantial business compatible to the best interests of the State. The taxes derived therefrom constitute an integral part of the tax structures of the State and counties. Where more than one horse race track is located in a radius of one hundred air miles of one or more horse race tracks, the changing, altering and varying of the racing periods from year to year, solely as the Board may see fit, is unsound and unwise. Such changing, altering, and varying creates a condition of uncertainty which retards the natural expansion and development of this business and influences the financial stability of the State and the counties. See Fla. Stat. § 550.081(1), F.S.A.
The effect of our decision in Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, Inc., supra, was to require a reconsideration of racing periods and allocate them in accordance with the following criteria:
(a) The interest of the State;
(b) The interest of the track owner;
(c) The good-will;
(d) The quality of the horses;
(e) The track facilities;
(f) Geography; and
(g) Skill in management.
After these criteria have been met, the racing date should be decided in a fair and impartial manner. See State ex rel. West Flagler Kennel Club, Inc. v. Florida State Racing Commission, 74 So.2d 691 (Fla. 1954).
After our decision in Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, Inc., supra, the Board awarded the most desirable "middle dates" to Hialeah. Gulfstream sought a review of the Board's order (Gulfstream Park Racing Association, Inc. v. Division of Pari-Mutuel Wagering, supra) contending that the Board
"[A]bused its discretion in not correcting the evils of monopoly and inequality *370 of opportunity which this Court found in ... Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, Inc., 245 So.2d 625." (253 So.2d p. 430)
This Court quashed the order of the Board and allocated the "middle dates" to Gulfstream, saying:
"[A]t least for the 1971-72 racing year, the first year after the invalidation of Section 550.081, exercise of sound discretion by the state racing authority would appear to warrant Gulfstream being given the middle dates as a competitive test during the upcoming racing season and perhaps as a prelude to a rotation system of racing dates annually between Gulfstream and Hialeah unless strong and compelling reasons otherwise dictate.
"We have searched in vain in the record of hearings in this matter before the administrative boards of the Department of Business Regulation for strong and compelling reasons in the form of competent and substantial evidence why Gulfstream should continue to smart at least for a test period under the `unconscionable advantage' so long accorded Hialeah by the invalidated statute.
"Under the special circumstances of this particular controversy Gulfstream vis-a-vis Hialeah, the factor of affording `equality of opportunity' to Gulfstream and some degree of rectification for the long years of discrimination is a most important factor preponderating over nearly all other considerations (State ex rel. West Flagler Kennel Club, Inc. v. Florida State Racing Commission, (Fla.) 74 So.2d 691) ordinarily material in fixing racing dates between competitors." (Emphasis supplied) (p. 431)
After enjoying the middle dates for the 1971-72 season, Gulfstream again sought the more desirable dates saying that their operation for one season did not give a "competitive test" nor did it amount to an adequate degree of rectification for the long years of discrimination. The Board agreed and entered the order which is now before us for review.
It is in the instances of an abuse of discretion in making an unreasonable or unsupported award, or one contrary to those factors established in the determination of the fixing of dates, or an erroneous application of the law, or a departure from the essential requirements of the law, that a court is justified in disturbing the administrative order. West Flagler Associates, Ltd. v. Division of Pari-Mutuel Wagering, supra.
The first step in any judicial proceeding to review an order of the Board is to ascertain whether there is substantial competent evidence legally sufficient to support the findings made by the Board. Of course, it is impossible for the Court to apply this rule intelligently unless the facts are stated with sufficient particularity to enable the Court to determine just what facts were found by the members of the Board, and then review the evidence as to those findings of fact which it is claimed were not supported by legally sufficient substantial competent evidence. See Brown v. Griffin, 229 So.2d 225 (Fla. 1969).
Without such a finding of facts the Court would be required to abandon the substantial competent evidence rule and either try the case de novo on the record, without having had the benefit of seeing and hearing the witnesses, or devise some other rule by which to measure the scope of its review of the evidence in such cases. See Brown v. Griffin, supra.
For one season we directed that, because of special circumstances, the factor of affording "equality and opportunity" to Gulfstream, as well as the factor of "rectification," should preponderate over other criteria. Gulfstream Park Racing Association, Inc. v. Division of Pari-Mutuel Wagering, supra, 253 So.2d 429, at p. 431. The fact that a "competitive test" for one *371 season was inconclusive to the Board should not be deemed to authorize or warrant an order of the Board ignoring the basic criteria in setting the racing dates for another season.
The order of the Board in allocating racing periods should contain statements of facts and findings as to those facts which the Board believes to be true. Findings should be made in considering each of the criteria, and then the racing periods should be decided in a fair and impartial manner.
In the absence of specific findings of facts, we cannot say that the Board considered all the criteria in allocating the racing periods. A mere conclusion, that "Gulfstream and Hialeah are comparable tracks in size and capacity, and the evidence presented failed to clearly establish whether Gulfstream or Hialeah is better able to meet the criteria," is insufficient. It cannot be said that the racing dates were set in accordance with the criteria set forth in our prior decisions. Instead, the Board attempted to construe our decision in Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, Inc., supra, as authority for continuing tests to determine the ability of both tracks, and also as authority to consider the additional factors of "equality of opportunity" and "rectification." This was an erroneous application of law and the decision of the District Court denying review by certiorari was in conflict with the principles enunciated by us in West Flagler Associates, Ltd. v. Division of Pari-Mutuel Wagering, supra, as well as Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, Inc., supra.
It is significant, but not always controlling, that the revenue produced for the State by Gulfstream during the last season was $400,000.00 less than the revenue produced by Hialeah the prior season during the same racing period. Even when Gulfstream was allocated the middle dates, Hialeah, as in the past, met all the criteria.
The best interest of the racing industry and the track owners would be served by calming the present turmoil now facing them. The constant rotation or shifting of dates retards the improvement and natural expansion of the racing industry. It may create such a condition of uncertainty that the owners and operators are unable to finalize plans for the racing season. This, in turn, would affect the financial stability of the State and the counties.
This Court will always strive to afford equal opportunity to all. We have in this case. But, all other factors being equal, tracks with records as best producers of revenue should prevail unless strong, compelling reasons otherwise dictate.
For the reasons stated above, we find there has been an abuse of discretion by the Board in fixing the racing dates. Because of the short period remaining for adequate preparation of the horse racing meets, we direct the Board to allocate the middle period to Hialeah. We therefore quash the decision of the District Court of Appeal and remand the cause with instructions to quash the order of the Board with directions to allocate the middle racing period to Hialeah and Gulfstream the dates the Board accorded Hialeah for the 1972-73 winter season.
Because of the impending start of the new racing season affected by this decision and in the public interest, as well as the interest of the State's revenue involved, we dispense with rehearing.
CARLTON and McCAIN, JJ., concur.
ROBERTS, C.J., concurs in the Opinion and the dictum in the Special Opinion of ERVIN, J.
ERVIN, P.J., agrees to Conclusion and concurs specially with Opinion.
BOYD, J., concurs in part and dissents in part.
*372 ERVIN, Justice (concurring specially):
It appears to me that the Board of Business Regulation has failed to follow our guidelines for settling the race date controversy between the Gulfstream and Hialeah Race Tracks, which guidelines we enunciated in Gulfstream Park Racing Assoc., Inc. v. Division of Pari-Mutuel Wagering, (Fla. 1971), 253 So.2d 429. In affirming this failure of the Board, the Third District Court of Appeal has conflicted with our decision.
In the guidelines, we indicated that to settle administratively the controversy between the tracks, a performance test only during the middle dates in 1972 should be undertaken by Gulfstream, to be compared with Hialeah's racing performance in 1971. It was implicit from our guidelines that if one of the tracks predominated over the other-particularly in the matter of the State's revenue take (which both parties agree is the paramount concern)  the next year's middle dates (1973) would be given to the predominant track. However, if neither track substantially predominated over the other, the implication was clearly left in our opinion that a rotation of the middle dates in alternate years between the two tracks was in order. We note from the record Hialeah's take for the State in 1971 exceeded Gulfstream's State take in 1972 by $400,000.
Competition between the two tracks was indicated by us in the guidelines to be of considerable value to the State because it was believed competition, the antithesis of monopoly would enhance the State's revenue take, its paramount concern  and competition, of course, meant a program of equality of opportunity for both tracks. Equality of treatment to the tracks was to be afforded annually unless strong and compelling reasons otherwise dictated.
The Board, instead of following these clearly indicated guidelines, postponed a determination based on Gulfstream's 1972 performance compared with Hialeah's 1971 performance. Instead, it decided another test is necessary with Gulfstream being favored with the middle dates in 1973 despite its poor 1972 test showing. Incongruously, however, the Board found that "Gulfstream and Hialeah are comparable tracks in size and capacity, and the evidence presented [i.e., the performance test] failed to clearly establish whether Gulfstream or Hialeah is better able to meet the criteria set forth in West Flagler Kennel Club v. Florida State Racing Commission, Fla., 74 So.2d 691 ..." The District Court, in agreeing with the Board, strayed from the paramount concern of the State: its revenue take, and insofar as our guidelines were concerned, erroneously emphasized several criteria for determining award of racing dates which were not primarily relevant to the specific test we deemed necessary in settling the controversy between Hialeah and Gulfstream.
It appears to me that the evidence indicated, and as the quoted finding of the Board confirms, at least for the present, rotation of the middle dates between the two tracks is in order unless strong and compelling reasons otherwise dictate. Gulfstream's revenue take for the State in 1972 was no justification for giving it the 1973 middle dates, although its take was close enough to Hialeah's 1971 performance for the Board to consider rotation between the tracks unless strong reasons otherwise indicated. The Board found no such strong reasons  instead, it departed from our directives and set forth other standards and called for another test.
Under the circumstances, I feel I am bound by our guidelines enunciated in Gulfstream Park Racing Assoc., Inc. v. Division, supra, just as I was similarly bound in the West Flagler-Biscayne dogtrack racing date case. See West Flagler Associates, Ltd. v. Board of Business Regulation, Fla. 1972, 265 So.2d 507.
*373 For the reasons stated above I concur in the conclusion reached in the opinion of Justices Adkins and Dekle.
ROBERTS, C.J., concurs.
BOYD, Justice (concurring in part, dissenting in part):
I do not believe this Court has jurisdiction in the matter because there is not sufficient conflict between the opinion of the District Court of Appeal, Third District, herein being reviewed and prior appellate opinions of this State to authorize the exercise of this Court's jurisdiction.
Because a majority of this Court has determined that the Court does have jurisdiction, and upon consideration of the record and the law, and since the Gulfstream track paid approximately $400,000 less to the State of Florida in the 1972 season than the Hialeah track paid in 1971, I concur with the majority view that the prime dates for 1973 should be granted to Hialeah, for the above reasons.