363 So.2d 799 (1978)
FLORIDA BRIDGE COMPANY, Petitioner,
v.
William H. BEVIS, Paula F. Hawkins, and William T. Mayo, As and Constituting the Florida Public Service Commission, Respondents.
No. 52341.
Supreme Court of Florida.
October 5, 1978.
*800 Peter J. Winders and James W. Ault of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, for petitioner.
Prentice P. Pruitt, Legal Director, and Norman H. Horton, Jr., Staff Counsel, Tallahassee, for Florida Public Service Commission, respondents.
ENGLAND, Chief Justice.
Section 347.08, Florida Statutes (1975), authorizes the Public Service Commission to fix and regulate the tolls and charges of any toll bridge in the State of Florida. Florida Bridge owns the bridge and causeway in Charlotte County running between Placida and Gasparilla Island across Gasparilla Sound. Following an investigation of the earnings, rates and charges of Florida Bridge, the Commission ordered a reduction in the rates which the company charges bridge users. The company has asked us to review the Commission's order, alleging several defects.
1. President's salary. Florida Bridge's president is paid an annual salary of $25,000 and, in addition, receives a $7,000 expense account for time spent in the home office of the company in Venice, Florida. The Commission determined that the president was in his office only 142 days out of approximately 250 working days during the 1974 test year, and on that basis disallowed 108/250ths of the president's combined compensation of $32,000. The Commission's justification for reducing the salary allowance is the absence of evidence to establish that the president acted as chief officer of the company on a full-time basis during the days he was away from the home office.
The Commission's action was arbitrary and constitutes a substantial departure from the essential requirements of law. The record reflects no evidence that the company president rendered services for any business other than Florida Bridge while not present in the company's home office, nor is there evidence to suggest that the president's duties were confined to those which he could perform while sitting at his desk in the home office. Indeed, the Commission has made no attempt to determine *801 whether the president's compensation is excessive in view of the services he provides. The arbitrary ratio by which the Commission reduced the salary and expense account  the ratio of days physically absent from the home office to the total number of workdays in the test year  has no support in logic, precedent, or policy. Metropolitan Dade County Water & Sewer Board v. Community Utilities Corp., 200 So.2d 831 (Fla. 3d DCA 1967). As to this expense item, the Commission's order is reversed.
2. Non-recurring legal fees. The Commission identified a $5,014.93 legal expense paid in the test year for a challenge to the tax valuation of company property in Charlotte County, and it directed that the fee be spread over five years. By capitalizing and prorating the fee, only $1,002.93 was included as an expense in the test year.
We have held that the Commission has discretion in rate-making proceedings to remove from a test year computation items which are non-recurring in nature. Gulf Power Co. v. Bevis, 289 So.2d 401 (Fla. 1974). Rather than entirely removing Florida Bridge's tax litigation expense from the test year, the Commission, in effect, deleted from the test year those legal expenses which exceeded the average legal fees for a period of five years. Such treatment of legal fees is clearly within the Commission's authority. See Westwood Lake, Inc. v. Metropolitan Dade County Water & Sewer Board, 203 So.2d 363 (Fla. 3d DCA 1967).
3. Maintenance expense. The Commission found that maintenance expenses incurred during the 1974 test year were extraordinary and should be allocated over a five-year period rather than all to a single year. Florida Bridge complains that the Commission failed to consider supportive evidence, tendered after the hearing was over but before the Commission's final decision, showing that the maintenance expenses were not extraordinary. We have previously held that the Commission has discretion to terminate its data-gathering function,[1] and we find no abuse of that discretion here. The reports which Florida Bridge tendered to the Commission after the hearing were newly prepared and had not been subjected to examination by the Commission and its staff, cross-examination or other evidentiary evaluation.
Florida Bridge also contends that the Commission improperly determined that test-year maintenance expenses were extraordinarily high. On this point, there was conflicting evidence before the Commission. It is within the Commission's authority to evaluate conflicting testimony and accord to each opinion whatever weight it deems appropriate. United Telephone Co. v. Mayo, 345 So.2d 648, 654 (Fla. 1977). Consequently, the Commission did not depart from the essential requirements of law in spreading extraordinary maintenance expenses over more than one year for rate-making purposes.
4. Capitalized franchise valuation. In 1968 petitioner recorded on its books an intangible asset entitled "unpaid franchise valuation" in the amount of $657,700. This amount represents losses sustained by the predecessor of Florida Bridge. A witness for Florida Bridge testified that $657,700 was the actual cost of securing the bridge franchise under accepted accounting practices. The Commission found, however, that the franchise entry violated generally accepted accounting principles, and it refused to consider the franchise value in its determination of the company's rate base. The Commission also maintains that Florida Bridge failed to provide documentary evidence that losses of its predecessor actually correlate to the amount expended for the predecessor's franchise.
The evidence of record indicates that the original records which established the predecessor company's losses were destroyed in the ordinary course of business in 1970. Florida Bridge points to other evidence, however, which correlates the amount of loss with capitalized franchise value. Both the Internal Revenue Service and the Commission audited the company *802 prior to 1970, when this franchise entry appeared on the company's books, and neither objected to the treatment of the franchise value at that time. In addition, the company's accountant gave unrefuted testimony that he entered the franchise asset on the company's books in 1968 when, as required by accounting practices acceptable at that time, he relied upon supporting documentation then available showing that the actual out-of-pocket expenditures equalled the amount which was capitalized. The accountant testified further that he would not have capitalized this intangible asset without some evidence of a cost justification at the time.
In light of the record evidence, and in the absence of any charge by the Commission that the company falsified accounts or otherwise attempted to avoid substantiation, the Commission's rejection of the capitalized franchise value was arbitrary and constitutes a departure from the essential requirements of law. See Deltona Corp. v. Mayo, 342 So.2d 510 (Fla. 1977). While the Commission is ordinarily free to disbelieve the testimony of any witness, the combination of circumstances offered in explanation by Florida Bridge was legally sufficient to require the Commission to produce, by some means, competent evidence of a malevolent or fraudulent purpose for the destruction of the records, of inaccuracy in the accountant's testimony, or of impropriety in the dollar amount assigned to the franchise asset. The Commission did none of these and must, therefore, be reversed on this point.
5. Extraordinary maintenance fund. In its order the Commission directed Florida Bridge to freeze a reserve account which had been established for extraordinary maintenance, and to deposit $35,788[2] each year into the account until it has accumulated a reserve of $200,000. The purpose of these directives  to ensure that funds would be available for extraordinary maintenance to the company's bridge facilities  was laudable. Florida Bridge asserts, however, that these directives exceed the Commission's authority to "fix and regulate tolls, charges, uses and hours" of the Florida Bridge facility.[3] We agree with the company. As stated in City of Cape Coral v. GAC Utilities, Inc., 281 So.2d 493 (Fla. 1973),
"[T]he Commission's powers, duties and authority are those and only those that are conferred expressly or impliedly by statute of the State. Any reasonable doubt as to the lawful existence of a particular power that is being exercised by the Commission must be resolved against the exercise thereof, and the further exercise of the power should be arrested." (Citations omitted.)[4]
See also Deltona Corp. v. Mayo, 342 So.2d 510, 512 n. 4 (Fla. 1977). The Commission's directives relating to the extraordinary maintenance fund are reversed.
Florida Bridge challenges four other aspects of the Commission's order, but we deem it unnecessary to consider these matters.[5] The Commission's modified order is set aside, and this case is remanded for further proceedings not inconsistent with this opinion.
It is so ordered.
BOYD, SUNDBERG, HATCHETT and ALDERMAN, JJ., concur.
NOTES
[1] United Telephone Co. v. Mayo, 345 So.2d 648, 651-52 (Fla. 1977).
[2] This figure represents the amount which the Commission determined to be excess annual revenue for the company after taxes.
[3] § 347.08, Fla. Stat. (1975).
[4] 281 So.2d at 496.
[5] Two of these issues concern the Commission's compliance with Florida's Administrative Procedure Act, Chapter 120, Florida Statutes (1975 and 1976 Supp.). As to these the Commission met the essential requirements of the Act, and no additional action is required to vindicate the company's procedural rights. The two remaining points raise constitutional issues which are mooted by our remand to the Commission for further proceedings.