443 So.2d 113 (1983)
GULFSTREAM PARK RACING ASSOCIATION, INC., a Florida Corporation, Petitioner,
v.
State of Florida, DEPARTMENT OF BUSINESS REGULATION, Division of Pari-Mutuel Wagering and State of Florida Department of Business Regulation, Florida Pari-Mutuel Commission, Respondents. Hialeah, Inc. and Tropical Park, Inc., Amici Curiae.
No. 83-1492.
District Court of Appeal of Florida, Third District.
August 17, 1983.
*114 Landefeld & Romanik and David S. Romanik, Hollywood, for petitioner.
Elliot Henslovitz, David M. Maloney and Harry Pernell, Tallahassee, for respondents.
Horne, Rhodes, Jaffry & Horne and Edward S. Jaffry, Taylor, Brion, Buker & Greene and James C. Pilkey, Tallahassee, for amici curiae.
Before SCHWARTZ, C.J., and BASKIN and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
In this world, nothing is certain but death, taxes and that Gulfstream and Hialeah will do annual battle for the highly desirable "middle dates" of South Florida's winter thoroughbred racing season.[1] We have been called upon to referee the 1983 fight or, at least, the opening rounds.

I.
In December 1982, Gulfstream Park Racing Association, Inc. (Gulfstream) filed its application requesting that the Florida Pari-Mutuel Commission (Commission) allocate to Gulfstream January 9, 1984, through March 6, 1984, the so-called "middle dates," for its race meeting and that the Division of Pari-Mutuel Wagering (Division) issue to Gulfstream a license to conduct thoroughbred racing. The simultaneous application of Hialeah, Inc. (Hialeah) contained the identical requests.
At or about the same time as it made its application, Gulfstream brought suit in the Circuit Court in Dade County for declaratory and injunctive relief. Gulfstream's suit called into question the constitutionality of Section 550.081, Florida Statutes (1981). Gulfstream asserted that the statute which authorizes the Commission to allocate racing dates among permitholders during the *115 winter thoroughbred racing season is an unlawful delegation of legislative authority because it is lacking in guidelines or standards to be used by the Commission in making its allocation decision. Because this same constitutional issue was then pending before the Fourth District Court of Appeal (the chosen referee of the 1982 version of the Hialeah-Gulfstream confrontation), the parties agreed below to await the decision of the Fourth District and, concomitantly, to have removed from the Commission's January 1983 agenda their allocation applications, to waive the time requirements of Section 550.011(2), Florida Statutes (1981), see infra, and agreed further that "[t]he Commission will not consider awarding the three periods for the 1983-1984 Season until after April 15, 1983."
In March 1983, the Fourth District ruled. Its decision prospectively declared Section 550.081, Florida Statutes (1980), unconstitutional as violative of the nondelegation doctrine. See Hialeah, Inc. v. Gulfstream Park Racing Association, Inc., 428 So.2d 312 (Fla. 4th DCA 1983). April, May and most of June 1983 came and went. On June 29, 1983, Gulfstream, fresh from victory in the 1982 bout, sought to avoid the inevitable rematch. Resurrecting Section 550.011(2), Florida Statutes (1981), which provides in pertinent part:
"If the Florida Pari-mutuel Commission does not take action on the request for days of operation and number of performances by March 15 in any year, then the days that are requested that are not in conflict with the operating days of another permitholder within 50 air miles shall be automatically awarded .. .,"
Gulfstream petitioned this court to issue a writ of mandamus compelling the Commission to assign to Gulfstream the requested middle dates and compelling the Division to issue the license therefor. Gulfstream argues that its stipulation to waive the March 15 deadline did no more than toll the necessity for Commission action from January 14, 1983, the date of the stipulation, to April 15, 1983, the date after which the Commission was free to act. That being the case, its argument continues, more than ninety days (sixteen before the stipulation and seventy-five after April 15) elapsed from the time of the filing of its application and under Section 120.60(2), Florida Statutes (1981), a license must issue.[2]
We immediately issued a rule to show cause to the respondents and learned from their response that on July 1, 1983, the Division had entered an order "awarding" the middle racing dates to Hialeah and the later dates (March 7, 1984, through May 3, 1984) to Gulfstream.
Gulfstream countered with a petition for issuance of extraordinary writ challenging the Division's award to Hialeah under every conceivable theory. Hialeah and Tropical Park, Inc. (Tropical) were thereafter granted leave to appear as amici curiae in these proceedings.

II.
We deny Gulfstream's petition for writ of mandamus. A necessary predicate to mandamus relief is that the duty which the petitioner seeks to have the respondent discharge be ministerial. See State ex rel. Allen v. Rose, 123 Fla. 544, 167 So. 21 (1936); Tallahassee Memorial Regional Medical Center v. Lewis, 399 So.2d 106 (Fla. 1st DCA 1981). The allocation of racing dates, where, as here, more than one track has applied for the same dates, is manifestly not a ministerial function. Cf. State ex rel. Calder Race Course, Inc. v. Department of Professional Business Regulation, 429 So.2d 103 (Fla. 3d DCA 1983) (where sole applicant for particular racing dates indisputably meets all the requirements, conditions and qualifications for a permit to conduct thoroughbred racing, *116 the duty to grant the permit is mandatory and not discretionary); Tropical Park, Inc. v. Department of Business Regulation, 433 So.2d 1329 (Fla. 3d DCA 1983) (same). Gulfstream argues, however, that because the authority of the Commission to allocate in Section 550.081(3), Florida Statutes (1981), has been declared unconstitutional, see Hialeah, Inc. v. Gulfstream Park Racing Association, Inc., 428 So.2d 312, without affecting the severable mandatory provisions of that section or other sections of Chapter 550, Tropical Park, Inc. v. Department of Business Regulation, 433 So.2d 1329 (Fla. 3d DCA 1983), the function of the Commission has been reduced to a ministerial one  award the dates requested by any qualified applicant.
The cornerstone of Gulfstream's argument, whatever its merit otherwise,[3] is the Fourth District's holding that the legislative delegation of power to the Commission to allocate racing dates to competing tracks is unlawful. Because we are of the view that Section 550.081(3) is constitutional despite our sister court's holding to the contrary, Gulfstream's argument is without support.[4]
Our disagreement with the Fourth District's holding in Hialeah, Inc. v. Gulfstream Park Racing Association, Inc., 428 So.2d 312, lies in that court's rejection of the argument advanced by the Commission that standards and guidelines announced in decisions of the Florida Supreme Court had been implicitly adopted by the Legislature when it reenacted Section 550.081(3) in 1980. We believe this argument has merit.
The first attempt by the Legislature to allocate racing dates between Hialeah, Gulfstream and Tropical came in 1947 when the Legislature in Section 550.081 provided that the track producing the largest amount of tax revenue during the preceding year be given its choice of racing dates, with the next highest producer receiving the second choice. Gulfstream challenged the constitutionality of the statute as being self-perpetuating in favor of Hialeah, which, at the time of enactment, had the middle dates which consistently produced the largest amount of tax revenue. The trial court found the statute unconstitutional, and on appeal the Supreme Court affirmed. See Hialeah Race Course, Inc. v. Gulfstream Racing Association, Inc., 245 So.2d 625 (Fla. 1971). Significantly, the court stated:
"The basic effect of our decision is to restore to the State Racing Commission and other appropriate authorities the discretionary power to assign the racing dates among the horse tracks located in Dade and Broward counties in the next and succeeding racing years in the manner provided by law, unaffected by voided § 550.081, Florida Statutes, F.S.A." 245 So.2d at 629-30 (emphasis added).
A year later, in Hialeah Race Course, Inc. v. Board of Business Regulation, 270 So.2d 366 (Fla. 1972), the Supreme Court explained what it meant by allocating dates in "the manner provided by law":
"This decision [Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, Inc., 245 So.2d 625] did not vest the Board with an unbridled discretion in fixing the periods of operation for the various horse tracks... .
"The effect of our decision in Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, Inc., supra, was to require a reconsideration of racing periods and allocate them in accordance with the following criteria:
"(a) The interest of the State;
(b) The interest of the track owner;

*117 (c) The good-will;
(d) The quality of the horses;
(e) The track facilities;
(f) Geography; and
(g) Skill in management.
"After these criteria have been met, the racing date should be decided in a fair and impartial manner...." 270 So.2d at 369.
The court found further that the constitutionally-required "equality of opportunity" among permittees was satisfied by a factfinding hearing discussing and applying the seven previous listed criteria. 270 So.2d at 371.
When in 1971 the Supreme Court restored to the State Racing Commission the discretionary power to assign racing dates, no statutory standards or guidelines for the exercise of that discretion existed. When in 1972 the court delineated the criteria for allocation, it did so against the backdrop of a statute that merely vested the Board with discretion to allocate. Assuming, arguendo, that the Legislature was free to adopt other or additional standards consistent with the constitutional principles outlined in these decisions, its adoption in 1980 of a statute containing no specific criteria for allocation is, in our view, an adoption of the criteria set forth in Hialeah Race Course, Inc. v. Board of Business Regulation, 270 So.2d at 369, where the court was confronted with a similarly standardless statute. While it may very well be that a court has no business judicially creating standards to fill a hiatus left by the Legislature, and that the 1972 decision is thus open to criticism, once such judicial standards have been created, the Legislature is presumed to know of their existence and to act in accordance therewith. State ex rel. Szabo Food Services, Inc. of North Carolina v. Dickinson, 286 So.2d 529 (Fla. 1973); Peninsular Supply Co. v. C.B. Day Realty of Florida, Inc., 423 So.2d 500 (Fla. 3d DCA 1982). Cf. Brown v. Brown, 432 So.2d 704 (Fla. 3d DCA 1983). Considering this time-honored rule of statutory construction in combination with the rule that statutes are presumed to be constitutional if there is any reasonable theory to that end, and shall be construed, if possible, in such a manner as to render them constitutional, Schultz v. State, 361 So.2d 416 (Fla. 1978); Department of Legal Affairs v. Rogers, 329 So.2d 257 (Fla. 1976), we conclude that the Legislature intended to incorporate into Section 550.081(3), Florida Statutes (1980), the criteria set forth in Hialeah Race Course, Inc. v. Board of Business Regulation, 270 So.2d at 369, to be used by the Commission in making its allocation decision. We therefore hold that Section 550.081(3) does not unlawfully delegate legislative authority to the Commission and is constitutional.[5]
Although we have decided that the Commission is not mandatorily required to award Gulfstream the middle dates, it is required to allocate those dates as between Hialeah and Gulfstream after an appropriate hearing in which the applicants will have an opportunity to establish their entitlement to these dates in accordance with the criteria implicitly adopted by the Legislature.
Finally, it is abundantly clear that the award of the middle dates to Hialeah and the denial of such an award to Gulfstream made by the Division was made without authority. The Commission, not the Division, is given the authority to allocate racing dates under Chapter 550. Administrative agencies, such as the Division, being creatures of statute, have only such power as the statutes confer. Florida Bridge Co. v. Bevis, 363 So.2d 799 (Fla. 1978); City of Cape Coral v. GAC Utilities, Inc. of Florida, 281 So.2d 493 (Fla. 1973); State v. Office of the Comptroller, 416 So.2d 820 (Fla. 2d DCA 1982); Fiat Motors of North America, Inc. v. Calvin, 356 So.2d 908 (Fla. 1st DCA), cert. denied, 360 So.2d 1247 (Fla. 1978); State ex rel. Greenberg v. Florida State Board of Dentistry, 297 So.2d 628 (Fla. 1st DCA), cert. dismissed, 300 So.2d 900 (Fla. 1974). Any *118 reasonable doubt about the lawful existence of a particular power that is being exercised by an administrative agency is to be resolved against its exercise. Florida Bridge Co. v. Bevis, 363 So.2d 799; City of Cape Coral v. GAC Utilities, Inc. of Florida, 281 So.2d 493. In the present case, however, there is not the slightest doubt that the Division is not possessed of the power to allocate. Both Section 20.16(4)(a) and Section 550.011(1), Florida Statutes (1981), expressly provide that the Commission "shall not delegate [its function to approve the dates for racing] to any subordinate officer or division." The Division's action is, accordingly, declared to be null and void.
In conclusion, we deny Gulfstream's petition for writ of mandamus upon a holding that the Commission is lawfully possessed of the discretionary power to allocate racing dates under Section 550.081(3), which is to be exercised, applying appropriate criteria, after due notice and hearing have been afforded the applicants. We grant Gulfstream's petition for writ of quo warranto challenging the authority of the Division's order awarding Hialeah the middle dates and quash such order upon a holding that the Division was without authority to enter this order.
NOTES
[1] On the certainty of death and taxes, see Daniel Defoe, History of the Devil, and Benjamin Franklin, Letter to M. Leroy, 1789. On the certainty of the annual battle between Gulfstream and Hialeah, consult indices to the Southern Reporter under either name.
[2] Section 120.60(2) provides in pertinent part:

"[E]very application for license shall be approved or denied within 90 days after receipt of the original application... . Any application for a license not approved or denied within the 90-day ... period . .., shall be deemed approved and, ... the license shall be issued."
[3] It necessarily follows from Gulfstream's position that the Commission would be required to award Hialeah the middle dates as well in derogation of a separate statutory provision that "[n]o horse tracks licensed to engage in the conduct of running races located within 100 air miles of each other shall operate on the same dates... ." § 550.011(1), Fla. Stat. (1981).
[4] This question was not reached in Tropical Park, Inc. v. Department of Business Regulation, 433 So.2d 1329 (Fla. 3d DCA 1983), and State ex rel. Calder Race Course, Inc. v. Department of Professional Business Regulation, 429 So.2d 103 (Fla. 3d DCA 1983), both of which could be, and were, decided by reference to statutes other than subsection (3) of Section 550.081.
[5] Accordingly, we need not address an alternative argument made by Tropical, as amicus, that Sections 20.16, 550.011 and 550.07, Florida Statutes (1981), none of which have been declared unconstitutional, give the Commission power to allocate.